STATE ex rel. CHARLES SCHUBERT v. BOARD OF SUPERVISORS OF
TOWN OF ROCKFORD and Others.[1]

December 6, 1907.

Nos. 15,344—(14).

**Ditch Act Unconstitutional.**
> Chapter 191, p. 215, of the general laws of 1907, provided for the con-
> struction of a ditch over lands adjoining those of the owner seeking to
> drain his own wet lands, inter alia, "where the construction of such ditch
> or drain is of benefit to the lands of adjoining owner or owners," and per-
> mitted the supervisors to decide upon the application for such a ditch "as
> they deem proper." Subsequent proceedings followed the analogy of local
> improvement assessments. The law is *held* to be unconstitutional, be-
> cause in effect it authorized the condemnation and assessment of the
> property of individuals for a purely private purpose only, and deprived
> the landowner of his property without due process of law.

Writ of certiorari from the supreme court upon the relation of
Charles Schubert to have the order and judgment of the board of
supervisors of the town of Rockford assessing petitioner's land for
the construction of a ditch declared void. Order and judgment re-
versed.

*W. H. Cutting,* for relator.
*J. T. Alley,* for respondents.

JAGGARD, J.

The relator secured a writ of certiorari to the board of supervisors
of a given town to review the proceedings had by them in the matter
of laying out a ditch or drain pursuant to chapter 191, p. 215, Laws
1907. The petitioner in those proceedings owned land adjoining that
of the relator. His petition set forth, inter alia, that on the south
side of his lands there were several acres of wet and marshy land,
which on account of its wet condition endangered the public health,
the drainage of which would promote the public health and would
reclaim several acres of that wet land. The proposed course of the
ditch was through the land of the relator. The essential question pre-

[1] Reported in 114 N. W. 244.

sented by the appeal is whether chapter 191, p. 215, Laws 1907, is constitutional. Relator insists that the law is unconstitutional and repugnant to the fourteenth amendment to the constitution of the United States and to the constitution of the state of Minnesota in that it sought to deprive the relator of his property without due process of law, and to take his property for a private purpose only, and for no public purpose, and to take and assess his land for a private purpose only.

The law in question (Laws 1907, p. 215, c. 191) is to be distinguished from the county drainage ditch act (chapter 258, p. 413, Laws 1901). The constitutionality of that act was sustained, because the drainage of large tracts of wet and overflowed lands would operate beneficially to the public and would conduce to public health, and because, therefore, property taken in its enforcement was taken for a public purpose, and not for private advantage. State v. Board of Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161. And see Lien v. Board of Commrs. of Norman County, 80 Minn. 58, 82 N. W. 1094. The propriety of that conclusion is not questioned by this appeal, nor by this decision.

The act here in question is an essentially different one. It purports by its title "to provide for the drainage of marsh, swamp or wet lands in any town or township in the state of Minnesota by the owners of such lands when the same cannot be drained without affecting the lands of others, and providing for a penalty for obstructing or injuring the ditches or drains constructed under the provisions of this act." Section 1 provides in substance that when any swamp, marsh, or wet land, on account of its condition, may endanger the public health, or where its drainage will result in the reclamation of otherwise waste lands, "or where the construction of such ditch or drain is of benefit to the lands of adjoining owner or owners," the person owning such wet lands may, in case the landowners shall be unable to agree in regard thereto, file with the designated officer a petition describing the lands through which it is desired to construct the ditch or drain and its general course or character. Thereupon, after hearing by the board of town supervisors, under section 2, upon notice and examination by them, the supervisors "shall decide upon the appli-

cation as they deem proper." Further provisions follow with respect to the construction of the ditch upon their favorable action, and with respect to assessments of benefits and damages, in accordance with the general analogy of local improvement assessments.

It is to be noted that the proceedings may be had under the act (1) when public health may be in danger; (2) or when the drainage would result in the reclamation of waste lands; (3) or "where the construction of such ditch or drain is of benefit to the lands of adjoining owner or owners." The use of the disjunctive in this connection is significant. It is a necessary and inherent part of the act. Under the express terms of the law the property of adjoining landowners may be taken for a private purpose only, and for no public purpose whatever. The basis of the law, in other words, has no necessary reference to either the preservation of the public health or the reclamation of large tracts of otherwise waste lands. The law authorizes the taking, against the owner's will, of enough of his lands to make a ditch, or the imposition of a burden on that land to that extent against the owner's will and for the benefit of an adjoining landowner. It is plainly designed to promote individual convenience. Of necessity, it affects the public only indirectly, as the public may share in the profit of the particular individual. If two adjoining landowners can agree upon such a ditch, the law would enforce a proper contract expressing the meeting of their minds; but it cannot compel one man to part with any part of his land, nor impose a burden upon it merely for his neighbor's advantage. It is wholly immaterial whether this is done directly or indirectly, through the general analogy of local improvement assessments.

It is elementary and undisputed that "a legislative act which takes or undertakes to authorize the taking of private property for a private object, either by taxation, or by the exercise of the power of eminent domain, or by any other means, is not a law, but an arbitrary decree whereby the property of one citizen may be transferred to another. Such an act is beyond the limits of the powers granted by the people to the legislatures of the states, and is without legal force or effect. The legislative power of taxation and power of eminent domain are alike limited to the exercise thereof for public objects, and

they cannot be successfully prostituted for private purposes. * * * The legislature cannot by its mere fiat make a private use a public one. It follows that a statute which attempts to authorize the condemnation of private property for other than a public use is void, without reference to any legislative declaration as to the nature of the use." Minnesota Canal & Power Co. v. Koochiching Co., 97 Minn. 429, 107 N. W. 405. It is equally certain that no assessment can be levied for a purely private purpose.

An examination of other parts of the same statute has served to emphasize the propriety of the conclusion here reached. Enough, however, has been set forth to show that the law is clearly unconstitutional.

It is accordingly ordered that the order and judgment of the board of supervisors heretofore made in this proceeding be and is in all things reversed and held for naught, and that all orders, judgments, and proceedings had under said law be vacated.