# STATE EX REL. FORD MOTOR COMPANY v. DISTRICT COURT OF FOURTH JUDICIAL DISTRICT.[1]

June 9, 1916.

Nos. 19,696—(107).

**Eminent domain.**

1. The power of eminent domain cannot be exercised to take private property for a private purpose.

**Same—exercise of right by municipal corporation.**

2. Municipalities authorized to take private property for certain designated purposes can take such property for no purposes other than those so designated. They can no more take it for some other public purpose than they can take it for some private purpose.

**Same—question for court—question for legislature.**

3. Whether a municipality has been given power to take private property for the purpose for which it is sought to be taken, and whether such purpose is a public purpose, are questions for the courts; but if such power has been given and the purpose be a public purpose, the necessity and propriety of taking the property is a legislative question over which the courts have no control.

**Presumption not conclusive.**

4. The presumption is that property taken under the power of eminent domain is being taken for the purpose stated in the condemnation proceedings; but this presumption is not conclusive and, whenever it clearly appears that under the guise of taking the property for a proper purpose it is in fact being taken for an improper purpose, it is the duty of the courts to intervene for the protection of the property owner.

**City of Minneapolis—condemnation of railroad right of way.**

5. The city of Minneapolis has power to condemn land for streets and alleys but not for a railroad right of way. The undisputed facts show clearly that, under the guise of laying out an alley, the city is attempting to take the relator's land for a railroad right of way. It may not thus pervert its power.

**No estoppel against owner.**

6. The relator is not estopped from invoking the aid of the courts as the agreement upon which the claim of estoppel is based relates only to a part of the property sought to be taken.

[1] Reported in 158 N. W. 240.

Upon the relation of the Ford Motor Company this court granted its writ of *certiorari* to review the action of the district court for Hennepin county Steele, J., in the matter of a proceeding instituted by the city of Minneapolis and commonly known as "Special Street Acquisition No. 132." Reversed.

*Lancaster, Simpson & Purdy,* for relator.

*C. D. Gould,* City Attorney, and *R. S. Wiggin,* Assistant City Attorney, for respondent.

TAYLOR, C.

The Ford Motor Company, by writ of *certiorari,* has brought before this court, for review, the action of the district court confirming the proceedings by which the city council of the city of Minneapolis laid out and established an alley through the land of the company in block 9 of Hoag's Addition in that city.

The company contends that the city is not taking its property for alley purposes, but, under the pretense of establishing an alley, is in fact condemning a right of way for a switching track from the Great Northern Railway to the property of the parties who petitioned for the alley. In other words, that the city is exceeding and abusing the power of eminent domain, given it by the state, by taking property thereunder for an unauthorized purpose, under the guise of taking it for an authorized purpose. The city contends that the declaration, in the condemnation proceedings, that the property is being taken for use as an alley is binding and conclusive upon the courts, and that they cannot look beyond such declaration for the purpose of ascertaining the real use intended to be made of the property.

The power of eminent domain can be exercised only to take private property for some public purpose; it cannot be exercised to take private property for any private purpose. Stewart v. Great Northern Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L.R.A. 427; Sanborn v. Van Duyne, 90 Minn. 215, 96 N. W. 41; Minnesota Canal & Power Co. v. Koochiching Co. 97 Minn. 429, 107 N. W. 405, 5 L.R.A. (N.S.) 638, 7 Ann. Cas. 1182; State v. Board of Suprs. of Town of Rockford, 102 Minn. 442, 114 N. W. 244, 120 Am. St. 640 ; State v. Van Reed, 125 Minn. 194, 145 N. W. 967. Also numerous cases cited in subdivisions VII and X of note found in 22 L.R.A. (N.S.) at page 23.

Where the legislature confers upon municipal authority to take private property for certain designated purposes, such municipalities can take such property for no purposes other than those so designated. They can no more take it for some other public purpose than they can take it for some private purpose.   10 R. C. L. § 168.

Whether a municipality which is seeking to take private property for a designated purpose, under the power of eminent domain, has been given the power to take private property for such purpose, and whether such' purpose is a public purpose, are questions for determination by the courts; but if the purpose for which the property is being taken be a public purpose, and the requisite authority has been conferred upon the municipality, the necessity, propriety and expediency of taking the property for such purpose is a legislative question over which the courts have no supervision or control.   Milwaukee & St. P. Ry. Co. v. City of Faribault, 23 Minn. 167; Fairchild v. City of St. Paul, 46 Minn. 540, 49 N. W. 325; Knoblauch v. City of Minneapolis, 56 Minn. 321, 57 N. W. 928; Janeway v. City of Duluth, 65 Minn. 292, 68 N. W. 24; Fohl v. Common Council of Village of Sleepy Eye Lake, 80 Minn. 67, 82 N. W. 1097; Webb v. Lucas, 125 Minn. 403, 147 N. W. 273.

In the present case the city of Minneapolis has authority to condemn private property for streets and alleys but not for a railroad right of way. The proceedings under review purport to take the property in question for an alley; but the relator has presented evidence sufficient to establish that this is a mere subterfuge, and that the property is in fact being taken for the purpose of permitting it to be used as a right of way for a switching track from the Great Northern Railway to property lying beyond the property of the relator.   This presents the question whether the courts may look beyond the declared purpose of the proceeding and ascertain the real purpose sought to be accomplished.

The case of Kansas City v. Hyde, 196 Mo. 498, 96 S. W. 201, 7 L.R.A. (N.S.) 639; 113 Am. St. 766, is nearly identical with the case at bar. In that case the city undertook to extend a street through the property of the defendant, and the defendant contested the right of the city to take his property on the ground that, although it was ostensibly being taken for a street, it was in fact being taken for a switching track.   The court say: [pp. 507, 513] "If it is a fact that the purpose of the council in passing the

ordinances was that these streets, when widened and extended as proposed, were to be given over to railway switch tracks, then the common council was proceeding to condemn private property for a purpose for which it had no right to condemn. * * *

"Could the city council by a false recital in the ordinance give it a validity which it would not have if it recited the truth? And when the city comes to ask the aid of the court to carry the ordinance into effect, is it possible that the court must be a mere tool to do the will of the council with no power to enquire into the truth of the matter? * * * But our law is not so lame and our courts not so impotent. The courts in such case will hear the evidence and find the facts. If the truth lies only in an unwritten agreement or understanding it can be proven only by oral testimony, and that being the best evidence of which the fact is susceptible the court must receive it and weigh it. * * *

"If as the defendant offered to prove the real purpose for which these ordinances were passed was to make a way for a switch track or switch tracks to property of an individual or any number of individuals, then it was a purpose for which the city council had no authority to condemn property and the passage of the ordinances was an abuse of its power, and the court should adjudge the ordinance void."

In Farist Steel Co. v. City of Bridgeport, 60 Conn. 278, 22 Atl. 561, 13 L.R.A. 590, the city had constructed an ornamental bridge. Both the board of public works and the committee on streets recommended in writing that the common council take action to prevent the erection of buildings immediately adjacent to the bridge, and the committee on streets suggested that such purpose be accomplished by extending the harbor lines. The common council proceeded to extend the harbor lines and to condemn a portion of the plaintiff's property for that purpose. The ulterior purpose was disclosed in the reports before the council, but not in the condemnation proceedings themselves. The court say: "The taking of private property in the legal establishment of harbor lines is *prima facie* a taking for public use. The legislature so considered it in granting the charter to the city of Bridgeport, and, though that fact is not conclusive, inasmuch as it is held almost universally that whether a particular use is public or not within the meaning of the Constitution is a question for the judiciary, still there can be no question but that property taken

in the legal establishment of harbor lines is taken for public use. But the right to establish harbor lines, and to take private property for that purpose, must be exercised in good faith and for a public use naturally connected with their establishment. Private property cannot be taken for other than public uses under the guise of taking it for public use. There may be difficulty in many cases in applying this rule, as where nothing appears in the proceedings of the purpose for which the lines were established, and the presumption would be that they were established in the interest of navigation. But where, as in the present case, all the proceedings declare the purpose to be an ulterior one, which no one would claim to be a public one within the meaning of the Constitution, when this purpose is spread upon the very records which are laid before us as containing the authority on which the assessment committee acted, we should be shutting our eyes to the real state of affairs, and permitting property to be taken under the excuse of the right of eminent domain in a case where no public use was contemplated, if we should decide in accordance with the appellee's claim. That would commit us to the doctrine that we are bound by the fact that it was a harbor line that was established, no matter for what purpose it appears to have been established nor how far it is removed from the harbor. We cannot accept that conclusion, but must hold that, whereas it appears from the records themselves, which are introduced to show the facts upon which the legality of the assessment depends, that the harbor lines were laid out for the purpose of preventing a new bridge from being marred by the building of structures connected with it which would obscure it, and not in the interests of navigation or any other public use, private property cannot be taken without violating constitutional rights."

In Stratford v. City of Greensboro, 124 N. C. 127, 32 S. E. 394, the plaintiff brought the action to enjoin the city from laying out a street on the ground that it was being laid out for the private use and benefit of one Cone. The court say: "Whether the use of the property which the delegated legislative authority has declared to be a public use *be such a use* as would sustain the authorities in taking, against the will of the owner, his property, is a judicial question. If the taking be in fact for the purposes of private use, if the basis of condemnation be the benefit of an individual and not the public interest and convenience, the

courts cannot be concluded by the action of legislative authority from exercising judisdiction in determining whether the use is a public use or one for *private* gain and advantage."

In County of San Mateo v. Coburn, 130 Cal. 631, 63 Pac. 78, 621, the court say: "If it can be shown by extrinsic evidence that the end sought to be accomplished is not of a public character, but is solely for private purposes, the condemnation will be denied as being in excess of the legislative power."

In Ligare v. City of Chicago, 139 Ill. 46, 28 N. E. 934, 32 Am. St. 178, the city passed an ordinance to widen Archer street and another ordinance to permit a railroad company to place its tracks in the street when widened. The court said: "Between condemning for the railroad companies and condemning for the city to then give to the railroad companies, there is in legal effect, and so far as concerns this case, no difference—they are precisely the same thing." And the court further said that "it may be shown that the use in fact is not public, but private," and held that "the condemnation adjudged is for a purpose unauthorized by law."

In Brown v. Gerald, 100 Me. 351, 61 Atl. 785, 70 L.R.A. 472, 109 Am. St. 526, the court say: "The condemnation proceedings afford, of course, *prima facie* evidence of the purposes of the taking, but we think this ought not to be, and is not, conclusive."

In Brown v. Gerald, 100 Me. 351, 61 Atl. 785, 70 L.R.A. 472, 109 576, the condemnation proceedings declared that the property was being taken for a wood and water station. The company had authority to take it for that purpose, but not for warehouse purposes. Alleging that the property was not desired for a wood and water station, but solely for warehouse purpose, the owner brought an action to enjoin the condemnation proceedings and the court held the facts stated sufficient to sustain the injunction.

In re Niagara Falls & Whirlpool Ry. Co. 108 N. Y. 375, 15 N. E. 429, it is said in the syllabus: "The question as to whether the uses are, in fact, public so as to justify such taking is a judicial one to be determined by the courts. In determining that question the courts are not confined to, and it is not to be tested exclusively by the description of those objects and purposes as set forth in the articles of association, but evidence

*aliunde,* showing the actual business proposed to be conducted, may be considered."

In Apex Transportation Co. v. Garbade, 32 Ore. 582, 52 Pac. 573, 54 Pac. 367, 882, 62 L.R.A. 513, the court say: "The facts and circumstances from which to determine the nature of the use to which the plaintiff proposes to put the land sought to be taken are practically undisputed, and we feel constrained to say that, in our judgment, they do not show such a use as would authorize the taking of private property without the consent of the owner."

See also Van Witsen v. Gutman, 79 Md. 405, 29 Atl. 608, 24 L.R.A. 403, in which the condemnation, by the city of Baltimore, of the plaintiffs' easement in an alley was held void on the ground that such condemnation was for the private benefit of the defendant.

While there is a strong presumption that property taken under the power of eminent domain is being taken for the purpose stated in the condemnation proceedings, we think that this presumption is not conclusive, and that it is the duty of the courts to intervene for the protection of the property owner whenever it clearly appears that, under the guise of taking his property for a proper purpose, it is in fact being taken for an improper purpose.

As already remarked, we think the evidence establishes that relator's property is being taken for a switching track and not for an alley. Without attempting to summarize the evidence which leads to this conclusion, we will merely indicate a few of the undisputed facts. Block 9 of Hoag's Addition lies between Fourth street north and Fifth street north and its northerly boundary is Fifth avenue north which crosses the streets at a right angle. Lots 4, 5, 6 and 7, being the southerly four lots of the block, belong to the Great Northern Railway Company and are covered by the railroad tracks of that company. All the remainder of the block, being lots 1, 2, 3, 8, 9 and 10, belong to the relator. Lots 3 and 8 adjoin the railroad right of way; lot 3 fronts on Fifth street and extends easterly to the center line of the block, lot 8 fronts on Fourth street and extends westerly to lot 3. None of the petitioners for the alley own any property in that block, but they own property in the blocks between Fourth and Fifth streets which lie beyond that block. An industrial switching track has been constructed from the Great Northern railway

through the tier of blocks next toward the east, enabling the owners of property in that tier of blocks to use it for industrial purposes. A similar switching track has also been constructed through the second tier of blocks toward the east. The alley in question begins at Fourth street, and its north boundary line at this end is the north boundary line of the railroad right of way; so that this end of the alley is wholly upon such right of way and is covered by railroad tracks. The alley then swings on a "railroad curve" to the centre line of the block between lots 1 and 10 and follows that line to the northerly boundary of the block at Fifth avenue north. This is the only alley in the city laid out upon such a curve. Both Fourth and Fifth streets are carried over the railroad right of way by viaducts 18 feet above the tracks, and Fifth avenue north is also carried by viaducts over the two industrial switching tracks above mentioned. In its present condition, the surface of the alley at its Fourth street end is 18 feet below the surface of that street, and its surface at its Fifth·avenue end is some 10 feet below the surface of that avenue, so that there will be no access to it at either end, unless it be brought.up to the surface of the streets by a trestle and bridge. It is not claimed that there is any intention of constructing such trestle and bridge, nor that there is any property to which they would afford access if constructed. The expense of laying out the alley is assessed wholly against the property in the blocks which would be served by a switching track, and the petitioners for the alley stated in a communication to the council that their purpose was to secure a right of way for such switching track. They disclose no other use that any of them could make of the alley. The relator acquired its property for the purpose of erecting thereon a large and expensive building adjacent to the railroad tracks for use in receiving, assembling and distributing its automobiles. The construction of such a building as the relator designed would have interfered with the acquiring of a right of way across its property, and the city council, at the instance of property owners in the blocks beyond, immediately initiated proceedings to lay out an alley. The pendency of these proceedings prevented the relator from obtaining from the building inspector a permit for the construction of its building, and the relator asserts that they were instituted solely for that purpose. These proceedings were subsequently abandoned, and new proceedings were begun and also abandoned, before the proceedings in con-

troversy were begun. The alley first proposed was not upon a curve, but extended in a right line along the center line of the block from the railroad tracks to Fifth avenue north and for that reason was not available for the purposes of a switching track. The chairman of the committee on streets at the time the original proceedings were instituted, and another member of that committee, testified to the effect that the purpose was to provide trackage facilities for the property of the petitioners. The term of office of these men had expired before the present proceeding was begun, but it clearly appears that the present proceeding is an attempt to carry out the original purpose. All the evidence presented was produced by the relator; the city rested upon the official records and offered no further evidence. The foregoing is by no means a complete summary of the evidence, but may serve to indicate why we are constrained to hold that the sole purpose of the proceeding is to acquire a right of way for a switching track. It is true that the railway company might have condemned a right of way for that purpose, but it made no attempt to do so, and the city has no power to do so.

The claim of the city that the relator is estopped from questioning the validity of the condemnation proceedings is without force. Conceding that the city is in position to invoke the doctrine of estopped, and giving the agreeement relied upon full effect, it would apply only as to lot 8 and not as to lots 9 and 10. The judgment of the district court is reversed.