STATE, BY MILES LORD, ATTORNEY GENERAL,
v. LLOYD A. FRISBY AND OTHERS.
PHILLIP R. LUTZI AND ANOTHER, APPELLANTS.

108 N. W. (2d) 769.

April 21, 1961—No. 38,050.

*Blethen, Ogle & Gage,* for appellants.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Albert H. Newman,* Special Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying appellants' motion for a new trial in condemnation proceedings for state highway purposes. Two issues are involved. Appellants urge (1) that the damages awarded by the jury are so inadequate as to require a new trial, and (2) that they were prejudiced by failure of the commissioners to comply with the provisions of Minn. St. 117.08 requiring separate awards for the value of the land taken and for damages to other property involved.

From the record it appears that the appellants are the owners of two lots in a residential area in North Mankato, Minnesota. On the north these lots have a frontage of 98.6 feet on South Avenue, and they extend in depth to the Minnesota River on the south, a distance of 205 feet on the west side and 210 feet on the east side. The state in constructing the highway, which runs parallel with the river, found it necessary to condemn the south half of the landowners' property. The taking has reduced the depth of the lots to approximately 95 feet from South Avenue to the north boundary of the new highway. A 6-foot wire fence will be constructed along the north boundary of the right-of-way so as to completely cut off access from the landowners' property to the highway and the river.

The landowners contend that the taking of the south half of the tract has greatly reduced the value of that part which remains. They assert that the part taken was tree-shaded and adapted for recreational pur-

poses, including fishing in summer and ice skating in winter, and that the removal of the trees and the establishment of the highway has deprived them of the privacy and natural beauty of their home. It would appear from the photographs, however, that the south half of the property was grown over with underbrush, and there is very little evidence in the record that it was ever used for recreational purposes. In 1951 the property was completely flooded and a dike was constructed along the middle of it 12 feet in width and 3 feet in height. It appears from the record that the highway and shoulders will be blacktopped and the land surrounding it will be sodded and kept in good condition, and in general the landowners would not be bothered by any appreciable amount of dirt, fumes, or noise. While the north boundary of the right-of-way will be 36 feet from the rear portion of the landowners' home, the highway itself will be more than 100 feet therefrom.

The commissioners who were appointed by the court made a lump-sum award to the property owners in the sum of $935. An appeal was taken on the ground that "the award of damages made by the commissioners is inadequate and does not fairly compensate [the landowners] for the land taken and the damages sustained." It was asserted that the damage is actually in the sum of $10,000. Upon trial, the jury returned a verdict in the sum of $1,750. This verdict is attacked on the ground that it is so disproportionate to the amount to which the landowners are entitled that it is not fair and impartial.

The landowners assert that the witnesses who testified in their behalf on the issue of damages were better qualified and knew more about real estate values in the Mankato area than the witnesses who testified for the state. The state called as its witnesses on value the three commissioners who made the original award. They testified without objection as to their qualifications. One of the state's witnesses had previous experience in appraising 115 parcels of land in the city of North Mankato and had been in the real estate and construction business for at least 50 years. While another was a farmer and auctioneer, it appears that he had experience in appraisal of property and had testified in condemnation proceedings on four other occasions—twice for the state and twice for landowners. Another of the state's witnesses was a retired farmer, had served as a township assessor, and was at one time

a mechanical engineer. He had testified for the state in condemnation proceedings on two other occasions and "two or three times" for landowners. He had been appointed as a commissioner about seven times. The witnesses who testified for the landowners, and who fixed the damage for the taking in amounts between $5,000 and $6,000, included a Mankato banker, a local building contractor, a real estate dealer, and a local professional appraiser.

While it would appear from the record that the witnesses for the state may not have been as impressive in their qualifications as those called by the landowners, they were nevertheless qualified to give an opinion as to the value of the property. On both direct and cross-examination they testified as to various items of damage and explained in detail the method of arriving at amounts of damage to the property and its value both before and after the taking. In considering the qualifications of the witnesses for the respective parties we cannot ignore the fact that the jury thought that the opinions expressed by the state's witnesses were more in line with the actual damage sustained than the opinions expressed by the landowners' experts.

While the verdict is conservative, it is not for this court to say that it is so disproportionate as to be partial and unfair. The question of damages is essentially one of fact for the jury to determine. Moreover, the trial court who heard the evidence and arguments of counsel on motion for a new trial with reference to the question of damages has determined that there is no such disparity between the award and the demonstrated damage, as evidenced by the record, which would warrant setting it aside as inadequate. An appellate court should not substitute its own judgment for that of the jury, even where we are of the view that the evidence submitted would justify a substantially larger verdict. In re Petition for Establishment of County Ditch No. 78, 233 Minn. 200, 46 N. W. (2d) 464; In re Improvement of Third Street, 177 Minn. 146, 225 N. W. 86, 74 A. L. R. 561; In re Assessment for Widening Third Street, 176 Minn. 389, 223 N. W. 458; see, also, State, by Lord, v. Shirk, 253 Minn. 291, 91 N. W. (2d) 437.

It is next contended by the landowners that a new trial must be granted because of a fatal jurisdictional defect in the proceedings. They say that in the original award by the commissioners the asserted

mandatory provisions of § 117.08 were ignored. That section, as far as applicable here, provides:

"* * * Whenever the state is acquiring property, the commissioners shall show in their report the amount of the award of damages which is to reimburse the owner and tenant or lessee for the value of the land taken, and the amount of the award of damages, if any, which is to reimburse the owner and tenant or lessee for damages to other property involved. The amounts awarded to each person shall also be shown separately."

The fatal defect, they argue, arises from the fact that the commissioners made the award in a lump-sum amount rather than in separate amounts as to value of the land taken and the amount of severance damage. This objection has not heretofore been raised in this court and must be considered on this appeal for the first time.

It appears to us from the plain language of § 117.08 that the legislature had in mind at least two or possibly three objectives:

(A) It intended that the report of the commissioners should show separately the amount of compensation to reimburse the owner and tenant or lessee for damage to their respective interests in the property taken. By allocating the separate amounts of compensation, subsequent litigation between the owner of the property and those having a lesser interest may be obviated.[1]

(B) The legislature intended that the commissioners should show by their report the amount of the award which is reimbursement for value of the land taken and for "damages to other property involved." We construe the latter phrase to mean compensation for the element of value arising out of relation of the part taken to the entire tract, commonly referred to as "severance damage."

(C) While we are without benefit of the legislative history of § 117.08, we agree that there is merit to the landowners' argument that one of the purposes of the statute is to provide the landowner with a finding for use in income tax accounting, in that that appor-

---

[1]This phase of the issue was not raised in State, by Lord, v. Rust, 256 Minn. 246, 98 N. W. (2d) 271.

tionment of compensation would establish the amount of severance damage upon which no income tax would accrue.

█ It is our view that these provisions with reference to the apportionment of damages by the commissioners are not jurisdictional requirements. The court acquired jurisdiction by the presentation of the petition to the district court in accordance with the provisions of statute showing the right on the part of the state to acquire the land and by statutory notice to persons interested in the property of the time and place of the presentation of the petition.[2]

█ It is generally said that, where the provisions of the statute do not relate to the essence of the thing to be done, are merely incidental or subsidiary to the chief purpose of the law, are not designed for the protection of third persons, and do not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not as mandatory.[3] Where no substantial rights depend on compliance with the particular provisions and no injury can result from ignoring them and where, as here, the legislative intent can be accomplished in a manner other than that prescribed with substantially the same results, the provision is directory. It cannot be said, as applied to the facts in this case, that the provisions of § 117.08 requiring separation of items of compensation in the commissioners' report are mandatory where the legislature has provided for an appeal to the district court, at which time, under the provisions of § 117.14,[4] the jury "shall

---

[2]Rheiner v. Union Depot, St. Ry. & T. Co. 31 Minn. 289, 17 N. W. 623; Town of Rost v. O'Connor, 145 Minn. 81, 176 N. W. 166, 9 A. L. R. 1265; In re Condemnation of Lands Owned by Luhrs, 220 Minn. 129, 19 N. W. (2d) 77.

[3]Bielke v. American Crystal Sugar Co. 206 Minn. 308, 288 N. W. 584; Rambeck v. La Bree, 156 Minn. 310, 194 N. W. 643; Wenger v. Wenger, 200 Minn. 436, 274 N. W. 517.

[4]Minn. St. 117.14 provides in part: "The cause shall be tried by a jury, unless the parties otherwise agree, and the court or jury trying the same shall reassess the damages and apportion the same as justice may require. Whenever the state is acquiring property, the jury or court shall show in the verdict or order the amount of the award of damages which is to reimburse the owner and tenant or lessee, for the value of the land taken,

reassess the damages and apportion the same as justice may require," and provision is made for the verdict to show precisely the same information which § 117.08 requires the commissioners' report to show. It was not the intention of the legislature, after prescribing in detail for a review of the award on appeal, to leave the landowner in a position where he could oust the court of jurisdiction because of an omission in the original report which might be supplied in the trial on appeal.[5]

■ While noncompliance with the directory provisions of the statute does not require that the proceedings be invalidated, there is nevertheless a duty to comply with them as nearly as practicable, and the provisions of the statute may not be ignored to the prejudice of one making timely objection. It appears from the trial court's memorandum and from the record that it was reluctant to require a literal compliance with the provisions of § 117.08 for the reason that double damages might follow. The proper measure of damages to which the landowner is entitled where part of his property is taken under eminent domain, and the measure generally adhered to by our courts, is the difference between the fair market value of the entire tract before the taking and the fair market value of what is left after the taking.[6] The practice followed by the trial court is in accordance with the general policy that the award for compensation be made in gross.[7] The total amount of the award for damages must be the same whether the

---

and the amount of the award of damages, if any, which is to reimburse the owner and tenant or lessee for damages to other property involved. The amounts awarded to each person shall also be shown separately."

[5]The issues to be tried in the district court are the same as the issues before the commissioners. The purpose of the appeal is to secure a retrial in the district court of the same matters passed upon by the commissioners. Rooney v. County of Stearns, 130 Minn. 176, 153 N. W. 858; In re County Ditch No. 33, 150 Minn. 69, 184 N. W. 374; 6 Dunnell, Dig. (3 ed.) § 3110.

[6]Some of the authorities on the measure of damages are gathered in State, by Lord, v. Pahl, 254 Minn. 349, 95 N. W. (2d) 85.

[7]Peterson v. City of Minneapolis, 175 Minn. 300, 221 N. W. 14; Oronoco School Dist. v. Town of Oronoco, 170 Minn. 49, 212 N. W. 8; State, by Lord, v. Radosevich, 249 Minn. 268, 82 N. W. (2d) 70.

land is owned by one person or several,[8] or whether severance damage is involved. In State, by Lord, v. Radosevich, 249 Minn. 268, 275, 82 N. W. (2d) 70, 74, we suggested that, where there are conflicting claims of ownership, special interrogatories might be used "in determining a division of such amount among the respective interests of the claimants." In like manner, it would seem that the danger of double recovery could be avoided by requiring the jury to fix the amount of the award in gross and then by special interrogatories allocate the amount of compensation for (1) the property taken and (2) severance damage to the remainder.

■ Since the landowners made no request of the court that the jury determine the amount of severance damage, it cannot fairly be said that they have been prejudiced by the absence of such a finding. The testimony of the landowners' expert witnesses as to damages was all on the basis of a lump-sum amount. On the other hand, the state's witnesses as to valuation testified as to elements of damage included in their lump-sum award and made it clear that included in that award was severance damage in the sum of $257 to the remaining property. Moreover, no exception to the court's instructions on the issue of damages was taken by the landowners. Accordingly, we find nothing in the record which would justify a new trial because of the asserted omission.

Affirmed.

Mr. Justice Otis, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[8]State, by Youngquist, v. Anderson, 176 Minn. 525, 223 N. W. 923.