**CITY OF GRANITE FALLS, petitioner, Respondent,**

v.

**SOO LINE RAILROAD COMPANY, a/k/a SLRCO and SERCO, et al., Respondents Below,**

**Burlington Northern and Santa Fe Railway Company, a/k/a BNSF, Appellant (A07–417),**

**Twin Cities & Western Railroad Company, a/k/a TC & W, Appellant (A07–418).**

**Nos. A07–417, A07–418.**

Court of Appeals of Minnesota.

Dec. 24, 2007.

692

Kevin K. Stroup, Ronald E. Seanor, Stoneberg, Giles & Stroup, P.A., Marshall, MN, for respondent City of Granite Falls.

David S. Drach, Canadian Pacific Railway, Minneapolis, MN, for Soo Line Railroad Company.

Glenn J. Olander–Quamme, Spence, Ricke, Sweeney & Gernes, P.A., St. Paul, MN, for appellant Burlington Northern and Santa Fe Railway Company (A07–417).

Thomas V. Seifert, Head, Seifert & Vander Weide, Minneapolis, MN, for appellant Twin Cities & Western Railroad Company, a/k/a TC & W (A07–418).

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for League of Minnesota Cities, amicus curiae.

Lori Swanson, Attorney General, David L. Phillips, Assistant Attorney General, St. Paul, MN, for State of Minnesota.

Dwayne N. Knutsen, Chippewa County Attorney, Montevideo, MN, for Chippewa County.

Bradley V. Larson, Metcalf, Larson, Muth & Fleming, P.C., Monticello, MN, for Lawrence A. Kreger.

Keith Beito, Granite Falls, MN, pro se.

Considered and decided by DIETZEN, Presiding Judge; WILLIS, Judge; and HUSPENI, Judge.*

## OPINION

DIETZEN, Judge.

In this condemnation proceeding, appellant-landowners challenge a district court order denying their motions for summary judgment and finding that the proposed taking is for a public purpose and that the taking is necessary to effectuate the public purpose. Because we conclude that the district court properly applied the law, we affirm.

## FACTS

Respondent City of Granite Falls (the city) is a Minnesota municipal corporation located in Chippewa County. Appellants BNSF Railway Company (BNSF) and Twin Cities & Western Railroad Company (TC & W) own property that is the subject of a condemnation petition filed by the city (the subject property). The city seeks to acquire, through exercise of its eminent-domain power, a twenty-five-foot-wide easement over appellants' railroad rights-of-way. The city's purpose in acquiring the subject property is to establish "an all-seasons, multi-purpose and non-motorized recreational trail for public use." But the city has indicated that it will not establish the trail itself; instead, the city intends to convey the subject property to the Minnesota Department of Natural Resources (the DNR), to build and maintain the trail.

The DNR is in the process of establishing similar recreational trails throughout

the state pursuant to legislative directives in chapter 85 of the Minnesota Statutes. The subject property will be incorporated into a larger trail that runs the entire course of the Minnesota River, from its headwaters at Big Stone Lake to its confluence with the Mississippi River at Fort Snelling. See Minn.Stat. § 85.015, subds. 6, 22 (2006) (describing the trail corridor along the Minnesota River).

In July 1998, SRF Consulting Group, Inc. conducted a feasibility study of the subject property, finding that the land was appropriate for a recreational trail. Subsequently, Short Elliot Hendrickson, Inc. (SEH) conducted a preliminary study of the feasibility of constructing a trail along the railroad rights-of-way, including the subject property, and concluded that the trail "can be safely designed and constructed on the railroad right-of-way." SEH sent a letter to a Minnesota House Committee in March 2001, concluding that the engineering of the trail was feasible. That year, the legislature designated the entire corridor of the Minnesota River Valley as a "state trail," thereby facilitating state investment in the acquisition, development, construction, and maintenance of trail segments in that corridor. 2001 Minn. Laws 1st Spec. Sess. ch. 2, § 84, at 1208.

In April 2005, the city filed its condemnation petition, which incorporated an earlier city-council resolution authorizing the acquisition of the subject property. The resolution stated that the city "has spent a great deal of time in public meetings and in independent research" regarding the feasibility of extending a recreational trail from Wegdahl to Granite Falls, consistent with the State of Minnesota's plans to develop a "state trail" along the entire

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Minnesota River corridor. The city concluded, among other things, that the SEH report confirmed that the trail could be completed along appellants' existing railroad right-of-way, that a paved trail could be built and used safely by the public, and that the State "would consider bonding for the funds necessary to further plan and acquire, develop, construct and maintain the unfinished corridor between Wegdahl and Granite Falls, if the State were assured that a local unit of government were committed to acquiring the real estate interests necessary to the construction." The resolution also indicated that the Parks & Trails Council of Minnesota agreed to lend the city up to $75,000, at no interest, for the purpose of acquiring the land necessary for the trail. Finally, the city concluded that completion of the trail "will add to the general well-being of the economic community of the entire river valley" and "will add significantly to retail economic development in downtown Granite Falls." Thus, the city authorized its attorney to commence negotiations and, if necessary, condemnation proceedings.

During discovery, the city and the DNR admitted that there have been no formal discussions regarding the transfer of the subject property to the DNR or its use as part of the Minnesota River Trail. The DNR stated in response to discovery that it "is currently developing a master plan for the Minnesota River State Trail"; that the draft plan "has not been formally released for public view and the DNR Commissioner has not approved the plan"; and that the subject property "falls within the 'corridor' or 'search area' for the Minnesota River State Trail identified in the draft plan."

Following discovery, appellants moved for summary judgment. The district court denied the motions, concluding that the taking was for a public purpose and was necessary and authorized by law, but changed the proceeding from a quick-take condemnation under Minn.Stat. § 117.042 to a standard proceeding under chapter 117. This appeal follows.

## ISSUES

1. Did the district court lack subject-matter jurisdiction over the condemnation petition?

2. Is the proposed taking for a public purpose and reasonably necessary to effectuate the public purpose?

## ANALYSIS

Appellants challenge the district court order denying their motions for summary judgment, which order concluded that the court has subject-matter jurisdiction over the petition and granted the petition for condemnation. Generally, the denial of a motion for summary judgment is not a final judgment from which an appeal may properly be taken. Minn. R. Civ.App. P. 103.03. But a district court order finding that a proposed taking serves a public necessity is an appealable order. *County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647, 650 (Minn.1978). The district court's conclusion that it has jurisdiction over the subject matter of this proceeding—also not a final judgment—is similarly appealable under *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn.1995). The remaining issues raised in the appellants' briefs are outside the scope of these exceptions, and thus are not properly before this court. *See Alexandria Lake Area Serv. Region v. Johnson*, 295 N.W.2d 588, 590 (Minn.1980) ("[w]e decline to extend the rule of the *Stauffenberg* case to situations beyond those involving the issue of public necessity").

## I.

The procedure for condemning property through eminent domain is governed by

chapter 117 of the Minnesota Statutes. A condemning authority initiates condemnation proceedings by filing a condemnation petition in district court and a notice of the proceedings with the registrar of titles and/or the county recorder. *See* Minn. Stat. §§ 117.055, 117.065 (2004). The district court then holds an evidentiary hearing to determine whether the petition should be granted; and approving the public use or public purpose, necessity, and authority for the taking. *See* Minn.Stat. § 117.075, subd. 1 (2004).

Appellants argue that the city's failure to strictly comply with the requirements of Minn.Stat. § 117.036 (2004)—which imposes pre-petition appraisal and negotiation requirements on the condemning authority—deprived the district court of subject-matter jurisdiction over the petition. The proper construction of a statute is a question of law that we review de novo. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn. 1996). The existence of subject-matter jurisdiction is also a question of law. *Neighborhood Sch. Coal. v. Indep. Sch. Dist. No. 279,* 484 N.W.2d 440, 441 (Minn.App.1992), *review denied* (Minn. June 30, 1992).

■■■ In the judicial context, "jurisdiction" refers to "[t]he legal power and authority of a court to make a decision." *Black's Law Dictionary* 869 (8th ed.2004). Subject-matter jurisdiction "involves a court's authority to decide a particular class of actions and its authority to decide the particular questions before it." *Herubin v. Finn,* 603 N.W.2d 133, 137 (Minn. App.1999). This concept goes to the heart of a court's legal authority to decide a case, and unlike personal jurisdiction, the court cannot acquire subject-matter jurisdiction "either by waiver or consent."

*Schroeder v. Schroeder,* 658 N.W.2d 909, 912 (Minn.App.2003).

■■■ A district court acquires subject-matter jurisdiction over an eminent domain proceeding upon the presentation and filing of a proper condemnation petition.[1] *Whitely v. Miss. Water Power & Boom Co.,* 38 Minn. 523, 525, 38 N.W. 753, 755 (1888); *Housing & Redevelopment Auth. v. Adelmann,* 590 N.W.2d 327, 333 (Minn.1999) (Anderson, Paul H., J., concurring specially). Appellants admit that a petition was properly filed but argue that Minn.Stat. § 117.036 was clearly intended by the legislature to be a jurisdictional prerequisite. We construe the words of this statute according to their plain and ordinary meaning. Minn.Stat. § 645.08(1) (2006); *State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004).

■■■ Minn.Stat. § 117.036 provides that condemning authorities, before commencing eminent-domain proceedings to acquire property for "transportation facilities," shall: (1) obtain an appraisal of the property proposed to be acquired, (2) provide a copy of the appraisal to the landowner, and (3) "make a good faith attempt to negotiate personally with the owner of the property in order to acquire the property by direct purchase instead of the use of eminent domain proceedings."[2] Appellants argue that strict compliance with this provision is necessary for a district court to acquire subject-matter jurisdiction over a condemnation petition. We disagree.

In *Housing & Redevelopment Auth. v. Adelmann,* our supreme court considered whether compliance with Minn.Stat. § 117.115, subd. 2, which requires notice of

---

[1]. The contents of a proper petition are prescribed in Minn.Stat. § 117.055 (2004). Appellants do not challenge the petition's compliance with that section.

[2]. Although not directly bearing on this case, we note that this section has since been amended to govern *all* condemnation petitions filed under chapter 117. 2006 Minn. Laws ch. 214, § 5, at 198.

the filing of the commissioners' report, is a jurisdictional prerequisite to appealing that award. 590 N.W.2d at 330. After noting that "[n]othing in the text of [the statute] states that condemning authorities must strictly comply with [its] requirements before a district court may acquire jurisdiction," the court held that "strict compliance with [the statute's requirements] is not a jurisdictional prerequisite." *Id.* at 330–31. The court's reasoning is equally applicable in this case. Like *Adelmann,* we see no language in section 117.036 that provides strict compliance with the statute by the condemning authority is required before the court acquires subject-matter jurisdiction.

Appellants argue that *State by Lord v. Radosevich* supports their position. 249 Minn. 268, 271, 82 N.W.2d 70, 72 (1957) ("[i]t is elementary that the right of appeal under our condemnation proceedings is governed by statute and that, unless the conditions prescribed by statute are observed, the court acquires no jurisdiction"); *see also Woodhall v. State,* 738 N.W.2d 357, 362 (Minn.2007) ("failure to comply with the statute governing appeals from eminent domain proceedings is a jurisdictional defect"). But *Radosevich* and *Woodhall* are distinguishable for two reasons. First, the rule expressed in those cases is limited to appeals from condemnation commissioners' awards under section 117.145. Neither court addressed the initial filing of the petition, which is at issue here. Second, the supreme court has repeatedly refused to extend this rule to the other sections of chapter 117. *See Adelmann,* 590 N.W.2d at 330–31 (holding strict compliance with Minn.Stat. § 117.115 is "not a jurisdictional prerequisite"); *State by Lord v. Frisby,* 260 Minn. 70, 76–77, 108 N.W.2d 769, 773 (1961) (holding that Minn.Stat. § 117.08 is not a "jurisdictional requirement" when the provision "do[es] not declare the consequences of a failure of compliance"). One

commentator has noted that "[d]espite the mandatory character of the negotiation requirement, most courts recognize that the requirement is excused where negotiations would be useless or futile." 6 Julius L. Sackman & David M. Jann, *Nichols on Eminent Domain* § 24.13[1][b], at 24–204 (3d ed.2002).

In *City of Minneapolis v. Wurtele,* our supreme court noted that rules of strict compliance "will be relaxed when the condemning authority is public rather than private." 291 N.W.2d 386, 391 (Minn. 1980). The *Wurtele* court stated:

> the law does not mandate in all cases strict and literal compliance with all procedural requirements. Technical defects in compliance which do not reflect bad faith, undermine the purpose of the procedures, or prejudice the rights of those intended to be protected by the procedures will not suffice to overturn governmental action.

*Id.* But in *Manco of Fairmont, Inc. v. Town Bd.,* we clarified that the substantial compliance doctrine should be restricted to cases in which the statute at issue does not "express[ ] the consequences of a failure to comply with its provisions." 583 N.W.2d 293, 295 (Minn.App.1998), *review denied* (Minn. Oct. 20, 1998). Here, the condemning authority is a public entity, and section 117.036 does not express the consequences for failure to comply with its provisions. Thus, we conclude that the substantial compliance doctrine may be applied to the requirements of Minn.Stat. § 117.036. We turn then to examine whether the city substantially complied with the statute.

The district court concluded that the city engaged in some negotiations in 2005 and submitted its appraisal to appellant after filing its petition for condemnation and, therefore, the city substantially complied with the statute. We agree. While noncompliance with the statute does not re-

quire that the proceedings be invalidated, the provisions of the statute may not be ignored to the prejudice of the property owner. *Frisby,* 260 Minn. at 77, 108 N.W.2d at 773. Here, appellants have not asserted that they were prejudiced by the city's failure, or that the city acted in bad faith. Further, the city introduced unrefuted evidence that efforts to voluntarily acquire the property would have been futile. Thus, the district court did not err in concluding that the city substantially complied with the statute. But we observe that in the proper case, we would not hesitate to approve sanctions against a condemning authority for failure to comply with the statute.

Because we agree the city's actions substantially complied with the requirements of section 117.036, we do not reach the city's alternative argument that the recreational trail is not within the class of "transportation facilities" governed by the statute.

## II.

Appellants argue that the taking of the subject property for the benefit of the DNR to develop it as a recreational trail is not necessary to effectuate a valid public use.

The Fifth Amendment of the United States Constitution provides in part: "[P]rivate property [shall not] be taken for public use without just compensation." This restriction on the condemnation of privately owned property is made applicable to the states through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). The Minnesota Constitution contains a similar restriction on condemnation in article I, section 13. It provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor,

first paid or secured." Minn. Const. art. I, § 13.

▬ Before condemning private land, the condemning authority "must determine that there is a public use for the land and that the taking is reasonably necessary or convenient for the furtherance of that public use." *Lundell v. Coop. Power Ass'n,* 707 N.W.2d 376, 380 (Minn.2006). Thus, in *Housing & Redevelopment Auth. v. Minneapolis Metro. Co.,* our supreme court stated:

> Great weight must be given to the determination of the condemning authority, and the scope of review is narrowly limited. If it appears that the record contains some evidence, however informal, that the taking serves a public purpose, there is nothing left for the courts to pass upon. Courts may interfere only when the [condemning] [a]uthority's actions are manifestly arbitrary or unreasonable.

259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960). Our scope of review is narrow because the district court gives deference to the determinations of the condemning authority, which are regarded as legislative actions, and the appellate courts give deference to the findings of the district court using the clearly erroneous standard. *Lundell,* 707 N.W.2d at 381.

### A. *Public Use*

▬ What constitutes a public use under Minn. Const. art. I, § 13 is a judicial decision. *City of Duluth v. State,* 390 N.W.2d 757, 763 (Minn.1986). But our supreme court has construed the words "public use" broadly. In *City of Duluth v. State,* the court stated:

> Historically, the court has used the words "public use" interchangeably with the words "public purpose," thus implying that even though a public entity, using its eminent domain powers, turns

over parcels to a private entity for use by that private entity, the condemnation will, nevertheless, be constitutional if a public purpose is furthered by such a transfer of land.

*Id.* Thus, the court authorized the taking even though the governmental entity transferred title and ownership of the property to a private entity to develop it. *Id.* at 764 ("[a]s long as the predominant purpose being furthered is a public one, the condemnation is constitutional").

Similarly, in *City of Minneapolis v. Wurtele,* our supreme court upheld the condemnation of privately held parcels for the construction of a privately owned mall in downtown Minneapolis. 291 N.W.2d at 388–90. The court deferred to the city council determination that a downtown mall was essential to maintaining a viable business district in the city. *Id.* at 390–91. A public purpose was recognized because there was evidence that the construction of the mall would create permanent and temporary employment, generate retail sales, and increase the tax base of the city. *Id.* Most recently, in *Housing & Redevelopment Auth. v. Walser Auto Sales, Inc.,* this court affirmed the district court's finding of public purpose in relation to the taking of property to be transferred to Best Buy Co., Inc. for its construction of a new corporate headquarters. 630 N.W.2d 662, 669 (Minn.App.2001), *aff'd,* 641 N.W.2d 885 (Minn.2002).

The same principles apply under the federal constitution. In *Haw. Housing Auth. v. Midkiff,* the United States Supreme Court stated that "it is only the taking's purpose, and not its mechanics, that must pass scrutiny under the Public Use Clause." 467 U.S. 229, 244, 104 S.Ct. 2321, 2331, 81 L.Ed.2d 186 (1984). And in *Kelo v. City of New London,* the Court held that a city may act as a conduit to transfer property from one private entity to another and that the economic rejuvena-

tion caused by such redevelopment "serves a public purpose" and therefore "satisf[ies] the public use requirement of the Fifth Amendment." 545 U.S. 469, 484, 125 S.Ct. 2655, 2665, 162 L.Ed.2d 439 (2005).

■ Respondent and amicus curiae League of Minnesota Cities argue that the same reasoning should apply to the city's intent to acquire the property and transfer it to the DNR for development as a recreational trail. Appellants do not dispute that a recreational trail is a public purpose, but argue that the city lacks the authority, express or implied, to acquire property for the benefit of the DNR. We disagree. Like the private redevelopment projects in *City of Duluth, Wurtele, Walser,* and *Kelo,* the condemning authority is acquiring the subject property for a public use. We do not read our takings jurisprudence to make a distinction based on whether the entity that actually develops the property for a public purpose is a public or private entity. Rather, we read existing law to focus on whether the proposed use is public or not. Here, the proposed use is clearly public and not private.

Appellants nonetheless argue that the DNR lacks statutory authority to acquire by eminent domain this specific portion of the state trail system. We agree that the statute does not provide the DNR with the power to condemn this portion of the Minnesota River Trail. *Compare* Minn. Stat. § 85.015, subd. 22 (describing Minnesota River Trail with no eminent domain authorization), *with* Minn.Stat. § 85.015, subds. 13(c), 14(c) (authorizing the DNR use of eminent domain for other parts of state trail system). But the statute does not prohibit the DNR from acquiring land from another public entity to be used for a lawful public purpose. Had the legislature intended to prohibit the DNR from acquiring lands from others to develop the recreation trails, it could have done so in the

legislation—but it did not. Consequently, we discern no legislative intent to prohibit the DNR from doing so. *See id.,* subd. 1(a) (conferring on the DNR broad authority to "establish, develop, maintain, and operate the trails").

Appellants next argue that *State ex rel. Ford Motor Co. v. District Court,* 133 Minn. 221, 158 N.W. 240 (1916), and Opinion of the Minnesota Attorney General 59a–14 (Dec. 30, 1958) support their position. We disagree.

In *Ford Motor Co.,* our supreme court held that the City of Minneapolis could not use eminent domain proceedings to acquire land with the intention of conveying the land to a railroad company for purposes of building a switching track. 133 Minn. at 229, 158 N.W. at 244. At that time, the City of Minneapolis had "authority to condemn private property for streets and alleys but not for a railroad right of way." *Id.* at 223, 158 N.W. at 241. Thus, the court concluded that the ultimate purpose for which the land would be used was beyond Minneapolis's condemnation authority. Now, 91 years later, the city undisputably *does* have authority to condemn private property for a public recreation area. Minn.Stat. § 465.01 (2004). Unlike in *Ford Motor Co.,* then, the proposed use of the property is within the city's condemnation authority.

▉ Appellants' reliance on a 49–year-old attorney general opinion is similarly misplaced.[3] The 1958 opinion at issue was prompted by the City of Thief River Falls questioning whether it could condemn a tract of land for the purpose of "conveying the same to the State of Minnesota Department of Highways for the construction of [a] roadside parking area and historic monument." Op. Att'y Gen. 59a–14 (Dec.

30, 1958). The attorney general answered in the negative, concluding that Minnesota law authorizes municipalities to condemn land for "municipal purposes only," and that the proposed condemnation was "not for municipal but for *state* purposes" because the city was acting "as a mere conduit for the transfer of the property to the state." *Id.* (emphasis in original).

▉ Although the attorney general's opinion may have been correct in 1958, the law of eminent domain has changed to such a degree that the conclusion no longer appears tenable. Under *City of Duluth, Wurtele, Walser,* and *Kelo,* municipalities currently have the authority to acquire property and transfer it to a private entity for redevelopment. Thus, the district court did not err in concluding that the taking satisfies the constitutional public-use requirement.

### B. Necessity

▉ Appellants argue that the proposed taking is speculative and is not necessary. "[I]n all eminent domain cases in this state, necessity, as well as public purpose, must be shown." *City of Duluth,* 390 N.W.2d at 764. The condemning authority is "not required to show an absolute or indispensable necessity, but only that the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose." *City of Pipestone v. Halbersma,* 294 N.W.2d 271, 274 (Minn. 1980) (quotation omitted). "To overcome a condemning authority's finding of necessity there must be overwhelming evidence that the taking is not necessary." *Lundell,* 707 N.W.2d at 381.

---

3. "Opinions of the Attorney General are not binding on the courts," *Star Tribune Co. v. Univ. of Minn. Bd. of Regents,* 683 N.W.2d 274, 289 (Minn.2004), although they "are entitled to careful consideration." *Billigmeier v. County of Hennepin,* 428 N.W.2d 79, 82 (Minn.1988).

The district court concluded that the taking was reasonably necessary and convenient for the public purpose of developing a recreational trail. We agree. Appellants rely heavily on *Regents of the Univ. of Minn. v. Chicago & Nw. Transp. Co.,* 552 N.W.2d 578 (Minn.App.1996), *review denied* (Minn. Nov. 20, 1996). In *Regents,* we stated that "[s]peculative purposes will not support the assertion of necessity," and held that the University's proposed condemnation was not necessary because it was for speculative, "stockpiling" purposes. *Regents,* 552 N.W.2d at 580 (quotation omitted). Our conclusion was based on the following facts:

> First, ... the University has not included this property on its master plan for its anticipated development of the Twin Cities campus. Second, although the University claims to have at least three potential uses for the land, the uses are mutually exclusive, and the Board of Regents has not yet approved a single project for the property. Finally, because of soil contamination problems, it is undisputed that the University could not currently use the property for any of its proposed uses. The parties have not yet agreed on a remediation plan; decontamination of the property will require from approximately two to seven years to complete. At least one University official has described the time period before the University would use the property as "potentially indefinite."

*Id.* We have subsequently clarified that "necessity cannot be thwarted by alleging that ... the purpose for condemning the property is too speculative if in fact the project is officially supported by the governmental entity and ordinary agreements are in place to realize the project." *In re Condemnation by Minneapolis Cmty. Dev. Agency (MCDA),* 582 N.W.2d 596, 597 (Minn.App.1998) (syllabus by the court), *review denied* (Minn. Oct. 29, 1998).

Moreover, we have stated that "[t]he rule established in *Regents* ... is limited by the extreme facts present in that controversy." *Itasca County v. Carpenter,* 602 N.W.2d 887, 890 (Minn.App.1999).

We do not find similarly extreme facts in this case. Here, the city is acting pursuant to two engineering studies. These studies concluded that the land was appropriate for a trail, and that the plan was feasible. The DNR has indicated that the proposed trail is within the corridor identified in its draft plan. The city has secured funding to compensate appellants for their damages. And perhaps most importantly, during the 2007 session, the legislature passed an amendment to Minn.Stat. § 85.015, subd. 22 (2006), directing that a trail segment "shall be established connecting the cities of Granite Falls and Montevideo." 2007 Minn. Laws ch. 131, art. 1, § 16, at 1066. The trail already exists from Montevideo to Wegdahl—the segment at issue here would connect to the existing trail at Wegdahl and complete the segment from Granite Falls to Montevideo, as directed by the amendment. Given these facts, we cannot say that there is overwhelming evidence showing that the city's decision to condemn the subject property is not necessary or convenient to further a public purpose. Thus, we affirm the district court's conclusion that the taking is necessary.

## DECISION

Because the city's failure to strictly comply with the requirements of Minn.Stat. § 117.036 (2004) did not deprive the district court of subject-matter jurisdiction over this case, and because there is evidence in the record to support the district court's conclusion that the taking is necessary to further a public purpose, the district court did not err in denying appel-

lants' motions for summary judgment and granting the city's petition.

**Affirmed.**