**MINNWEST BANK, M.V., Respondent,**

v.

**Chadley ARENDS, et al., Defendants,**

**New Vision Co-op, Appellant.**

**No. A10–2167.**

Court of Appeals of Minnesota.

Aug. 15, 2011.

Thomas P. Melloy, Jeffrey A. Peterson, Gray, Plant, Mooty, Mooty & Bennett, P.A., St. Cloud, MN, for respondent.

Richard W. Sobalvarro, Gregory J. Haupert, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for appellant.

Considered and decided by Wright, Presiding Judge; Schellhas, Judge; and Willis, Judge.*

## OPINION

WRIGHT, Judge.

In this appeal from summary judgment in favor of respondent bank, appellant feed supplier asserts that its livestock production input lien has priority over respondent's security interest in the same livestock. Appellant argues that the district court erred by concluding that appellant's failure to comply with the notice requirements of Minn.Stat. § 514.966, subd. 3(b), prevented appellant from obtaining priority over respondent's security interest. We affirm.

## FACTS

In February 2005, respondent Minnwest Bank obtained an agricultural security interest in the livestock of Chadley Arends, who owned and operated a feeder-pig and crop farm in Redwood County. The livestock, along with other farm property, inventory, and the proceeds and products thereof, secured Arends's debt to Minnwest, which was in excess of $8,218,000.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Appellant New Vision Co-op, a livestock-feed supplier, sold feed to Arends for his pig operations from February 2009 to July 2009. Arends failed to pay New Vision for livestock feed delivered in May 2009, resulting in an outstanding balance of $281,504.04. On June 29, 2009, New Vision perfected a livestock production input[1] lien by filing a UCC-1 financing statement with the Minnesota Secretary of State. The financing statement claimed an "agricultural lien"[2] secured by livestock located on several Minnesota properties owned by Arends. In an effort to secure priority over Minnwest's preexisting security interest, on July 7, 2009, New Vision delivered a lien-notification statement to Minnwest, which notification asserts an "agricultural production input lien" for all feed supplied to Arends between May 1, 2009, and December 31, 2009.[3] Arends's livestock subsequently was sold and the proceeds were placed in an escrow account.

Minnwest commenced this action to determine the validity, extent, and priority of its security interest in Arends's livestock. Minnwest moved for summary judgment as to the validity and priority of New Vision's asserted livestock production input lien, arguing that New Vision failed to obtain priority over Minnwest because New Vision did not comply with the provisions of the statutory notice requirement. The district court granted summary judgment in favor of Minnwest and ordered $281,503.04 of the proceeds from the sale

of Arends's livestock to be distributed to Minnwest. This appeal followed.

## ISSUE

May a holder of a livestock production input lien obtain priority over a lender's preexisting security interest without complying with the lien-notification requirements of Minn.Stat. § 514.966, subd. 3(b)?

## ANALYSIS

Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's decision to grant summary judgment to determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Livestock production input liens such as the one that New Vision holds are governed by Minn.Stat. § 514.966, subd. 3 (2010). "A supplier furnishing livestock production inputs in the ordinary course of business has a livestock production input lien for the unpaid retail cost of the live-

---

1. "'Livestock production input' means feed and labor used in raising livestock." Minn. Stat. § 514.965, subd. 8 (2010).

2. The statutory definition of an agricultural lien includes, but is not limited to, the livestock production input lien at issue here. Minn.Stat. § 514.965, subd. 2 (2010).

3. In addition to the May 2009 feed balance of $281,503.04, Arends owed New Vision

$23,027.74 for feed delivered in June and July 2009. Although this debt was secured by the livestock production input lien that New Vision asserted, the parties subsequently reached a settlement as to the debt arising from the June and July 2009 deliveries, which debt is not at issue in this appeal. New Vision supplied no feed to Arends after July 2009.

stock production input.... A livestock production input lien becomes effective when the agricultural production inputs are furnished by the supplier to the purchaser." Minn.Stat. § 514.966, subd. 3(a). The parties do not dispute, and we agree, that New Vision's livestock production input lien was created when New Vision provided the feed to Arends, *see id.*, and was perfected when New Vision filed a financial statement within six months after supplying the feed, *see id.*, subd. 6(a), (d) (2010) ("An agricultural lien under this section is perfected if a financing statement is filed ... within ... six months after the last date that livestock production inputs are furnished."). New Vision, thus, holds a perfected livestock production input lien that secures the unpaid cost of feed that New Vision supplied to Arends.

The dispute here concerns the relative priority of the security interest held by Minnwest and the livestock production input lien held by New Vision. The general priority rules of perfected security interests and agricultural liens in the same collateral are established in Minn.Stat. § 336.9–322(a)(1) (2010), a provision of the Uniform Commercial Code, which provides that

> [c]onflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.

This general priority rule is limited by Minn.Stat. § 336.9–322(g) (2010), which provides that "[a] perfected agricultural lien on collateral has priority over a conflicting security interest in or agricultural lien on the same collateral if the statute

creating the agricultural lien so provides." *See* Minn.Stat. § 336.9–322(f)(1) (2010) (providing that applicability of Minn.Stat. § 336.9–322(a) is subject to limitations in Minn.Stat. § 336.9–322(g)).

Section 514.966 governs several agricultural liens on livestock, including veterinarian's liens, breeder's liens, livestock production input liens, and feeder's liens. Minn.Stat. § 514.966, subds. 1–4 (2010). This statutory framework also establishes a different scheme of prioritization for livestock production input liens. For example:

> (h) Except as provided in paragraph (i), a perfected livestock production input lien under this section has priority against all competing security interests *as provided in subdivision 3* in livestock and the products and proceeds thereof.
> (i) A perfected livestock production input lien has priority over a competing security interest in the livestock and proceeds and products thereof if the livestock production input lien is effective before the secured party has given value to the debtor.

*Id.*, subd. 8 (2010) (emphasis added).

New Vision's livestock production input lien became effective in May 2009 and was perfected one month later, more than four years after Minnwest gave value and obtained its security interest in Arends's livestock in February 2005. Accordingly, Minn.Stat. § 514.966, subd. 8(i), is inapplicable. But because Minn.Stat. § 514.966, subd. 8(h), grants a perfected livestock production input lien priority over all competing security interests in the same collateral "as provided in subdivision 3," we examine Minn.Stat. § 514.966, subd. 3, to determine the priority of the liens at issue here.

In addition to creating and specifying the effective date of livestock production input liens, section 514.966, subdivision 3,

provides a means by which the holder of a livestock production input lien may obtain priority over a lender's preexisting security interest. "A supplier shall notify a lender of a livestock production input lien by providing a lien-notification statement to the lender in an envelope marked 'IMPORTANT–LEGAL NOTICE.'" *Id.*, subd. 3(b). The lien-notification statement must include the following: (1) the name and business address of the lender, (2) the name and address of the supplier claiming the lien, (3) a description and date or anticipated date or dates of the transaction and retail cost or anticipated costs of the livestock production input, (4) the name and address of the person to whom the livestock production input was furnished, (5) the name and address of the livestock's owner, and (6) a statement that products and proceeds of the livestock are covered by the livestock production input lien. *Id.*, subd. 3(c). Within ten days of receiving a lien-notification statement as described in subdivision 3(b) and (c), the lender must respond to the supplier with a letter of commitment for part or all of the amount in the lien-notification statement or a written refusal to issue a letter of commitment. *Id.*, subd. 3(d). If a lender does not respond to the supplier within ten days after receiving the lien-notification statement, the livestock production input lien obtains priority over the lender's security interest in the same livestock or their proceeds. *Id.*, subd. 3(f).

New Vision prepared a lien-notification statement containing the information specified in section 514.966, subdivision 3(c), and sent the statement to Minnwest by certified mail. But New Vision failed to place the phrase "IMPORTANT–LEGAL NOTICE" on the outside of the envelope containing its lien-notification statement as required by subdivision 3(b). New Vision contends that, notwithstanding its failure to comply with this aspect of the statutory

notice requirement, it obtained priority over Minnwest's security interest when Minnwest did not respond to the lien-notification statement.

Whether New Vision's failure to comply with the statutory notice requirements of Minn.Stat. § 514.966, subd. 3(b), prevented it from obtaining priority presents a question of statutory interpretation, which we review de novo. *S.M. Hentges & Sons, Inc. v. Mensing,* 777 N.W.2d 228, 231 (Minn.2010). The goals of statutory interpretation are to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2010). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). A statute's language is ambiguous only when it is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). We construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980); *see also* Minn.Stat. § 645.08(1) (2010) (providing that words are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *Beecroft v. Deutsche Bank Nat'l Trust Co.,* 798 N.W.2d 78, 82–83 (Minn.App.2011).

■ Applying these principles, section 514.966, subdivision 3(b), is unambiguous. The plain language of the statute provides that a supplier "shall" notify a lender of a livestock production input lien by (1) preparing a lien-notification statement containing specified information and (2) placing the lien-notification statement in an

envelope marked "IMPORTANT–LEGAL NOTICE." Minn.Stat. § 514.966, subd. 3(b). The word "shall" connotes a mandatory requirement and is not permissive. *Compare* Minn.Stat. § 645.44, subd. 16 (2010) (stating that " '[s]hall' is mandatory") *with* Minn.Stat. § 645.44, subd. 15 (2010) (stating that " '[m]ay' is permissive"); *see In re Welfare of S.L.J.,* 782 N.W.2d 549, 558 (Minn.2010) (noting that absent clear legislative intent to the contrary, courts are to adopt these statutory definitions of "shall" and "may"). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16. Because we discern no clear legislative intent to the contrary, and because giving the provision its literal meaning creates no ambiguity in the statute's application in this case, we conclude that the plain meaning of section 514.966, subdivision 3(b), mandates that a supplier provide the notification in the manner specified. *See* Minn.Stat. § 514.966, subd. 3(b).

We observe that our construction of the statute is consistent with the statutory scheme set forth in section 514.966, subdivisions 3(b)–(f), 8(h)–(i). This statutory scheme alters the priority of agricultural liens provided by the Uniform Commercial Code, Minn.Stat. § 336.9–322 (2010), when certain prerequisites are satisfied. One of those prerequisites is the provision of a lien-notification statement to a lender in an envelope that clearly indicates that it provides legal notice. Minn.Stat. § 514.966, subd. 3(b). If the requirements of section 514.966, subdivision 3(b), are not satisfied, a purported lien-notification statement does not trigger the lender's responsibility to respond so as to preserve its priority. *Id.,* subd. 3(b), (d), (f). Under such circumstances, the supplier has failed to supply adequate notification, and the lender retains its priority. Because New Vision failed to include the phrase "IMPORTANT–LEGAL NOTICE" on the exterior of its notification to Minnwest, New Vision's notice of its livestock production input lien was ineffective. Accordingly, New Vision failed to establish its priority over Minnwest's security interest.

 Relying on cases construing mechanic's-lien statutes, New Vision argues that section 514.966, subdivision 3, should be liberally construed to require only substantial compliance with the statute. *See Dolder v. Griffin,* 323 N.W.2d 773, 779–80 (Minn.1982) (observing that mechanic's-lien statutes are liberally construed after the lien has been created); *London Constr. Co. v. Roseville Townhomes, Inc.,* 473 N.W.2d 917, 919–20 (Minn.App.1991) (observing that mechanic's-lien statutes are remedial statutes that are generally liberally construed). New Vision maintains that, because its lien-notification statement complied with all of the other notification requirements except subdivision 3(b), it supplied sufficient legal notice to Minnwest of New Vision's livestock production input lien so as to change the priority of each party's secured interest. This argument is unavailing. Even in the mechanic's-lien context, Minnesota courts are not free to disregard the plain language of a statute. "[W]hen the language of a mechanic's lien statute is *unclear and ambiguous,* it should be liberally construed in favor of a mechanic's lien claimant," but when statutory language is "clear and free from ambiguity, [the court's] role is to enforce the language of the statute, and not explore the spirit or purpose of the law." *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 758–59 (Minn.2010) (emphasis added). Thus, the liberal construction of section 514.966, subdivision 3(b), that New Vision advocates would be inconsistent not just with our canons of statuto-

ry construction generally, but also with the caselaw addressing construction of mechanic's lien statutes. Further, the application of even the mechanic's lien caselaw in this context would demand that we apply the plain language of an unambiguous statute and enforce its language.

New Vision also argues that application of a substantial-compliance standard is warranted here because section 514.966, subdivision 3, is directory, rather than mandatory, as it states no consequences for failing to comply with the lien-notification-statement requirements. *See City of Minneapolis v. Wurtele,* 291 N.W.2d 386, 391 (Minn.1980) ("[T]he law does not mandate in all cases strict and literal compliance with all procedural requirements. Technical defects in compliance which do not reflect bad faith, undermine the purpose of the procedures, or prejudice the rights of those intended to be protected by the procedures will not suffice to overturn governmental action, particularly where, as here, substantial commitments have been made."); *Sullivan v. Credit River Twp.,* 299 Minn. 170, 176–77, 217 N.W.2d 502, 507 (1974) (holding that statute that "does not declare the consequences of a failure to comply may be construed as a directory statute" and failure to comply with statute does not necessarily invalidate actions taken pursuant to statute); *see also State v. Frisby,* 260 Minn. 70, 76, 108 N.W.2d 769, 773 (1961) (stating that "where the provisions of the statute do not relate to the essence of the thing to be done, are merely incidental or subsidiary to the chief purpose of the law, are not designed for the protection of third persons, and do not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not as mandatory"). But the cases on which New Vision relies concern governmental entities and their compliance with statutory provisions. Our legal research

has not identified any caselaw in which Minnesota courts have applied the mandatory and directory distinction to a lien dispute between two private parties; and New Vision has not articulated a persuasive rationale for us to do so here. *See State v. Hester,* 796 N.W.2d 328, 335 & n. 5 (Minn.2011) (declining to apply the *Frisby* and *Wurtele* analyses in criminal context).

■ Moreover, even if we construed Minn.Stat. § 514.966, subd. 3(b), to require only substantial performance, New Vision's notification would not satisfy that standard. New Vision's failure here is not merely a defective attempt to comply with the requirement to place notice on the exterior of the envelope but a complete failure to attempt compliance with this requirement. No notification of any kind that signifies the purpose or contents of the envelope appears on the outside of the envelope. If, as New Vision asserts, a supplier could achieve priority without placing any notice on the envelope's exterior, the statutory provision that "[a] supplier shall notify a lender of a livestock production input lien by providing a lien-notification statement to the lender in an envelope marked 'IMPORTANT–LEGAL NOTICE'" would be entirely superfluous. Application of a substantial-compliance standard in this case would, thus, render this statutory notice requirement meaningless. We presume that the legislature intended the entire statute to be effective and certain, and we decline to construe the statute in such a way as to render express statutory language meaningless. *See* Minn.Stat. § 645.17(2) (2010) (providing that in ascertaining the intent of the legislature, courts presume that the legislature intends the entire statute to be effective and certain).

The record does not establish that adequate notice was given here to trigger

Minnwest's responsibility to respond so as to preserve its priority. That New Vision's envelope was received at a Minnwest location and opened does not establish that Minnwest received adequate notice. Specifically, the envelope containing New Vision's lien notification statement lacked the designation "IMPORTANT–LEGAL NOTICE" required by statute, which assists lenders in ensuring that lien-notification statements are directed to the appropriate individuals in the lender's office who can respond within the statutory ten-day timeframe. This notice both assists the lender with a preexisting security interest and protects against any error the livestock-feed supplier may have made in addressing the notification to the appropriate division of the lender's organization. Because New Vision's envelope containing the lien-notification statement failed to comply with Minn.Stat. § 514.966, subd. 3(b), New Vision's livestock production input lien did not obtain priority over Minnwest's preexisting security interest in the same livestock.

## DECISION

Among the requirements to obtain priority over a lender's preexisting security interest, Minn.Stat. § 514.966, subd. 3(b), requires a supplier holding a livestock production input lien to notify the lender of the supplier's livestock production input lien by sending the lender a lien-notification statement containing specified information in an envelope marked "IMPORTANT–LEGAL NOTICE." Because appellant did not comply with this provision, the district court properly granted summary judgment in favor of respondent.

**Affirmed.**