**STATE of Minnesota, Respondent,**

**v.**

**Brian Noel HESTER, Appellant.**

**No. A09–1784.**

Supreme Court of Minnesota.

April 27, 2011.

Lori Swanson, Attorney General, Joan M. Eichhorst, Assistant Attorney General, St. Paul, Minnesota; and Patrick R. Rohland, Redwood County Attorney, Redwood Falls, Minnesota, for respondent.

Allen P. Eskens, Eskens Gibson and Behm Law Firm, Chtd., Mankato, Minnesota, for appellant.

## OPINION

GILDEA, Chief Justice.

The question presented in this case is whether a Lower Sioux Indian Community ("Lower Sioux") police officer is a peace officer authorized to invoke the implied-consent law and request that a person suspected of driving while impaired submit to a chemical test for the presence of alcohol or controlled substances. Because we conclude that the Lower Sioux must have liability insurance limits in the amounts required by statute in order for a Lower Sioux police officer to qualify as a peace officer under Minn.Stat. § 169A.03, subd. 18(3) (2010), and because those limits were not in place at the time appellant was arrested for driving while impaired, we reverse.

On July 9, 1998, the Lower Sioux and Redwood County entered into a Mutual Aid and Assistance Agreement "to address the[ir] respective roles and responsibilities ... in providing law enforcement services on the Lower Sioux Indian Reservation." The agreement reflects that if the Lower Sioux satisfied "certain statutorily defined requirements," they would "share concur-

rent jurisdiction with the County over persons in the geographical boundaries of property held by the United States in trust for the" Lower Sioux. Each party agreed to assist the other with respect to law enforcement duties to the extent each was "reasonably able in the event of an emergency situation."

The parties do not dispute that the agreement was in effect on December 16, 2008, the date of appellant's arrest. On that evening, Officer Jonathan Meece, a Lower Sioux police officer, responded to a motorist assist call. When Meece arrived at the scene, he found that appellant Brian Hester had driven his car into a ditch on a steep hill. The temperature was between 10 and 15 degrees below zero and the roads were packed with snow and ice. Meece suspected that Hester was impaired and called for assistance. Officer Neil De-Blieck, also a police officer with the Lower Sioux, responded to the scene. DeBlieck administered a preliminary breath test to Hester, and the test indicated that Hester had an alcohol concentration of .13. Meece transferred Hester to the Redwood County Jail to conduct further tests to determine Hester's level of impairment, because Meece concluded that it was safer to conduct further testing at an indoor location given the conditions outside.

After completing the field sobriety tests administered at the jail, Meece placed Hester under arrest and read Hester the implied-consent advisory, informing Hester that Minnesota law required that he submit to further testing and that refusing to submit to further testing would constitute a crime. Hester refused to submit to further testing.

The State subsequently charged Hester with first-degree driving while impaired in violation of Minn.Stat. §§ 169A.20, subd. 1(1), 169A.24, subd. 1(1) (2010), and first-degree test refusal, in violation of Minn. Stat. §§ 169A.20, subd. 2, 169A.24, subd. 1(1) (2010).[1] The first count was dismissed prior to trial. A Redwood County jury found Hester guilty of test refusal.

Hester filed a motion for a new trial and, in the alternative, a motion to vacate the judgment. Hester contended that he did not commit a crime when he refused Meece's request to submit to testing because Meece was not a peace officer under the definition set forth in Minn.Stat. § 169A.03, subd. 18. Hester asserted that under Minn.Stat. §§ 169A.41 and 169A.51 (2010), only police officers who satisfy the definition of a peace officer under section 169A.03 are authorized to administer a preliminary breath test and the implied-consent advisory. Hester argued in the alternative that the Lower Sioux did not have the authority to appoint peace officers with the same powers as peace officers employed by the Redwood County Sheriff pursuant to Minn.Stat. § 626.91 (2010), because the Lower Sioux had not complied with the liability insurance requirements in that statute.

The district court denied Hester's post-trial motions. The court concluded that Lower Sioux police officers satisfied the definition of a peace officer under section 169A.03, subdivision 18. The court also held that the Lower Sioux had complied with the liability insurance filing requirements in Minn.Stat. § 626.91, subd. 2(a). Specifically, the court concluded that at the time of Hester's arrest, the Lower Sioux had substantially complied with the requirements of Minn.Stat. § 626.91, subd. 2(a), regarding liability insurance, and that

---

**1.** Both offenses are first-degree violations because the offenses arose within ten years of the first of three or more qualified prior impaired driving incidents. *See* Minn.Stat. § 169A.24, subd. 1(1) (2010).

substantial compliance was all that was required.

The court of appeals affirmed the district court in an unpublished decision. *State v. Hester*, No. A09–1784, 2010 WL 3000144, at *6 (Minn.App. Aug. 3, 2010). The court held that the definition of peace officer in section 169A.03 did not "exclude all tribal peace officers." *Hester*, 2010 WL 3000144, at *4. The court also held that the Lower Sioux officers were peace officers under section 169A.03 because the Lower Sioux had "substantially complied with the statutory requirements to appoint peace officers." *Hester*, 2010 WL 3000144, at *6. We granted Hester's petition for review.

■ Hester argues that we should set aside his conviction for criminal test refusal because Officer Meece, the officer who requested that Hester take the chemical test, did not have the authority under state law to require that Hester submit to the test. A person commits test refusal if he or she "refuse[s] to submit to a chemical test of the person's blood, breath, or urine" that is required under Minn.Stat. § 169A.51 (2010). Minn.Stat. § 169A.20, subd. 2. Under Minn.Stat. § 169A.51, subd. 1(a), a person who drives a motor vehicle in the state consents to a chemical test of that person's blood, breath, or urine in order to determine the presence of alcohol or other substances. In addition, a chemical test "may be required" when "an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of

section 169A.20." *Id.*, subd. 1(b). Importantly, the chemical test "must be administered at the direction of a peace officer." *Id.* Thus, under the plain meaning of the criminal test-refusal statute, a person can commit test refusal only if he or she refuses a "peace officer['s]" request to take a chemical test of the person's blood, breath, or urine.

Hester makes two arguments that Meece was not an authorized "peace officer" for purposes of the test-refusal statute. He first argues that the Lower Sioux police officer who arrested him did not qualify as a "peace officer" because Lower Sioux police officers are not specifically listed in the definition of "peace officer" in Minn.Stat. § 169A.03, subd. 18. He also argues that the Lower Sioux police officer who arrested him did not have the authority to request that he submit to a chemical test because the Lower Sioux did not satisfy the liability insurance requirements of section 626.91, subdivision 2. We turn to those arguments now.

I.

■ We first consider whether, as the State argues and as the court of appeals and district court held, a Lower Sioux police officer is a "peace officer" authorized to request and administer a chemical test of a person's blood, breath, or urine. This presents a question of statutory interpretation that we review de novo. *See Roby v. State*, 787 N.W.2d 186, 190 (Minn. 2010).[2]

---

2. The State contends that Hester waived his right to challenge Lower Sioux police officers' authority to administer the laws of Minn.Stat. ch. 169A (2010) because Hester did not raise this issue in a pre-trial motion as required by Minn. R.Crim. P. 10.01. Under the rule, "[d]efenses … that can be determined without trial on the merits must be made before trial" or those defenses are waived. Minn. R.Crim. P. 10.01, subd. 2. But under the rule, the district court "can grant relief from waiver for good cause." *Id.* The record suggests that the court may have granted Hester such relief. In an affidavit filed in response to Hester's post-trial motion, the State noted that the court had "granted leeway to the defendant to bring what would otherwise be deemed omnibus issues up post-trial." The

The Minnesota Impaired Driving Code, chapter 169A, defines the term "peace officer" as:

(1) a State Patrol officer;

(2) University of Minnesota peace officer;

(3) police officer of any municipality, including towns having powers under section 368.01, or county; and

(4) for purposes of violations of this chapter in or on an off-road recreational vehicle or motorboat, or for violations of section 97B.065 or 97B.066, a state conservation officer.

Minn.Stat. § 169A.03, subd. 18. The parties present different views on how we should determine whether a Lower Sioux police officer falls under this definition. Hester employs a strict reading of section 169A.03, subdivision 18, contending that Lower Sioux police officers cannot be considered "peace officers" under this subdivision because they are not included as one of the four categories of officers who qualify as "peace officers." The State contends that we can look beyond section 169A.03, subdivision 18, to answer this question. The State argues that police officers appointed by the Lower Sioux are peace officers within the definition of section 169A.03, subdivision 18, because tribal officers have the same powers as peace officers employed by the Redwood County Sheriff pursuant to Minn.Stat. § 626.91 (2010).

Minnesota Statutes § 626.91 addresses the law enforcement authority of the Lower Sioux. Under this statute, the Lower Sioux "has the powers of a law enforcement agency if" the requirements listed in subdivision 2(a) of the statute are met. Minn.Stat. § 626.91, subd. 2(a). And, under subdivision 4, "[i]f the community complies with the requirements set forth in subdivision 2, the community is authorized to appoint peace officers . . . who have the same powers as peace officers employed by the Redwood County sheriff." Minn. Stat. § 626.91, subd. 4.

The State correctly relies on section 626.91 in arguing that Lower Sioux police officers fall within the definition of a peace officer in section 169A.03, subdivision 18(3). The Legislature intends for statutes to be effective and certain. Minn. Stat. § 645.17(2) (2010). Interpreting the definition of a peace officer in section 169A.03 to include Lower Sioux police officers appointed under section 626.91 would give effect to the language in section 626.91, which provides that if the Lower Sioux complies with the requirements set forth in subdivision 2 of that statute, then it may appoint peace officers who have the *"same powers"* as peace officers employed by the Redwood County Sheriff. Minn. Stat. § 626.91, subd. 4 (emphasis added). If the requirements of Minn.Stat. § 626.91, subd. 2, are met, then Lower Sioux police officers can be treated as *county* peace officers for purposes of the definition of a peace officer set forth in section 169A.03, subdivision 18.

record does not, however, include a ruling from the court on the waiver issue. The court of appeals concluded that the State "failed to raise its waiver argument when Hester made his posttrial motion." *Hester*, 2010 WL 3000144, at *2. Before this court, the State does not challenge the court of appeals' conclusion that the State waived its waiver argument, and it does not argue that the issue should nevertheless be decided based on a plain error analysis. Moreover, to the extent the district court granted relief from the waiver for good cause, the State has not presented a record on which we can review the district court's ruling. Nor has the State presented any argument that the district court abused its discretion. Given the State's failure to adequately preserve and present the waiver argument, we decline to address it.

Hester argues, however, that *State, Department of Highways v. O'Connor*, 289 Minn. 243, 183 N.W.2d 574 (1971), compels the opposite conclusion. In *O'Connor*, the defendant asserted that the State could not arrest him for failing to submit to a chemical test because the Eagan police officer who requested that he submit to a chemical test was not a peace officer under the definition in the Minnesota Impaired Drivers Code in effect at that time. *Id.* at 244–45, 183 N.W.2d at 576. This definition stated that for purposes of the implied-consent law, "the term peace officer means a state highway patrol officer or full time police officer of any Municipality or county...." *Id.* at 244, 183 N.W.2d at 575. At the time of the offense, Eagan was a township. *See id.* at 243, 245–46, 183 N.W.2d at 575–76. Because townships were not specifically listed within the definition, the defendant argued that the Eagan officer was not a "peace officer" for purposes of the statute. *Id.* at 244–45, 183 N.W.2d at 576. We concluded that the police officer had no authority to request that a driver submit to a chemical test under the implied-consent law because the "statute defining 'peace officer' does not specifically include an officer of a 'township' and ... the term 'municipality' does not include 'township.'" *Id.* at 244–45, 183 N.W.2d at 576.

*O'Connor* does not support Hester's interpretation of the meaning of "peace officer" under section 169A.03. We did not conclude in *O'Connor* that the Eagan police officer was not a "peace officer" simply because the statute did not explicitly list townships in the definition of peace officer. Rather, we also looked at whether a "township" was within the scope of "municipality," which was explicitly listed in the statute. 289 Minn. at 244, 183 N.W.2d at 576. Because we concluded that a township was different from and not included within a municipality, the Eagan officer

was not a peace officer under the statute. *Id.* at 245–46, 183 N.W.2d at 576.

Under the analysis in *O'Connor*, it is not dispositive that tribal officers are not specifically listed in the definition of "peace officer" in section 169A.03, subdivision 18. *O'Connor* instead requires that we also look to see whether tribal officers fall within some other portion of the statute's definition. As set forth above, the Lower Sioux officers can be treated as county officers, and therefore would fall within the definition of "peace officer" in subdivision 18(3), if the Lower Sioux complies with Minn.Stat. § 626.91.

■ In sum, we hold that a Lower Sioux police officer is a "peace officer" under section 169A.03, subdivision 18(3), if the Lower Sioux satisfies the requirements set forth in section 626.91, subdivision 2. When these requirements are satisfied, the Lower Sioux has the authority to appoint peace officers with the same authority as peace officers employed by the Redwood County Sheriff. *See* Minn.Stat. § 626.91, subd 4. Because Lower Sioux officers so appointed have the same authority as officers employed by the Redwood County Sheriff, we conclude that the Lower Sioux officers fall within the definition of "peace officer" in Minn.Stat. § 169A.03, subd. 18(3).

## II.

■ We next turn to the question of whether the Lower Sioux complied with section 626.91, subdivision 2. The Lower Sioux has the authority to appoint police officers with the same powers as peace officers employed by the Redwood County Sheriff if it complies with the requirements set forth in section 626.91, subdivision 2(a). Minn.Stat. § 626.91, subds. 2(a) and 4. Subdivision 2(a) contains four requirements, but only the requirement in clause

(2) is at issue. This clause requires that the Lower Sioux file with the Board of Peace Officer Standards and Training a bond or certificate of insurance for liability coverage with a maximum single occurrence amount set forth in Minn.Stat. § 466.04 (2010), and an annual cap for all occurrences within a year of three times the single occurrence amount. Minn.Stat. § 626.91, subd. 2(a)(2).[3] For the time period relevant to Hester's arrest, January 1, 2008 to June 30, 2009, section 466.04 required liability insurance for any number of claims arising out of a single occurrence of $1,200,000. *See* Minn.Stat. § 466.04, subd. 1(a)(6) (setting forth the maximum single occurrence amounts). The requisite annual cap, therefore, was $3,600,000, which is three times the single-occurrence amount.

Hester contends that the Lower Sioux did not strictly comply with all of the requirements of section 626.91. Specifically, Hester argues that the Lower Sioux did not have the amount of liability insurance required under section 626.91, subdivision 2(a)(2), when he was arrested. Consequently, Hester argues, the Lower Sioux did not have the authority to appoint police officers with the same powers as peace officers employed by the Redwood County Sheriff.

The Lower Sioux had liability insurance at the time Meece arrested Hester on December 16, 2008.[4] But, as Hester notes and as the district court found, the limits did not coincide with the requirements set forth in section 466.04. The Lower Sioux had $3,000,000 in coverage per single occurrence—well above the $1,200,000 minimum required by statute. But the Lower Sioux policy had an annual cap of only $3,000,000, which is $600,000 below the minimum amount required by statute.

Hester asserts that we distinguish between mandatory and directory language and he contends that because section 626.91 uses mandatory language, we must conclude that section 626.91, subdivision 2(a)(2), requires strict compliance. Because the Lower Sioux did not have the required insurance, Hester contends that the statute was not satisfied. The State argues, and the lower courts held, that because the statute requires only substantial compliance, the Lower Sioux satisfied the statute's requirements.

In reaching its conclusion that only substantial compliance was required, the court

---

**3.** The other requirements in subdivision 2(a) require the Lower Sioux to: agree to be subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment; file with the Board of Peace Officer Standards and Training a certificate of insurance for liability for its officers for lawsuits under the United States Constitution; and agree to be subject to Minn.Stat. § 13.82 and any other laws of the state relating to data practices of law enforcement agencies. Minn.Stat. § 626.91, subd. 2(a)(1), (3)–(4). There is no dispute in this case as to the Lower Sioux's compliance with these requirements.

**4.** The parties dispute how often the Lower Sioux was required to file a copy of its certificate of insurance for liability coverage with the Board of Peace Officers and Training.

The State argues that the district court properly determined that the Lower Sioux was only required to file a certificate of insurance with the Board at the time it entered into the mutual aid agreement with Redwood County and that Minn.Stat. § 626.91, subd. 2(a), does not require more than this initial filing with the Board. According to the State, the obligation to have liability insurance is distinct from any obligation to file a certificate of insurance with the Board. *See id.* Because we conclude that the Lower Sioux did not have the amount of liability insurance coverage required by Minn.Stat. § 626.91, subd. 2(a), at the time of Hester's arrest, we need not determine whether Minn.Stat. § 626.91, subd. 2(a), also requires more than an initial filing of a certificate of insurance for liability coverage with the Board.

of appeals relied on *City of Minneapolis v. Wurtele*, 291 N.W.2d 386 (Minn.1980). The State urges us to follow the analysis in *Wurtele* as well. In *Wurtele*, we stated,

> [T]he law does not mandate in all cases strict and literal compliance with all procedural requirements. Technical defects in compliance which do not reflect bad faith, undermine the purpose of the procedures, or prejudice the rights of those intended to be protected by the procedures will not suffice to overturn governmental action, particularly where, as here, substantial commitments have been made.

*Id.* at 391.

But *Wurtele* was a condemnation dispute, not a criminal prosecution. We specifically referred in *Wurtele* to a compliance rule that is "applied in eminent domain cases." *Id.* The State offers no analysis as to why the test articulated there should be imported into criminal law. We decline to do so and do not rely on this language from *Wurtele* to determine whether the Lower Sioux complied with the statutory requirements for liability-insurance coverage.[5]

We turn instead to our precedent from the criminal law in which we have examined the impact of the failure to comply with statutory requirements. In *State v. Quinn*, 436 N.W.2d 758 (Minn.1989), we considered whether evidence should have been suppressed when a wiretap warrant failed to include a statutorily-mandated phrase that it "must terminate upon attainment of the authorized objective." 436 N.W.2d at 758, 765–66. We held that the warrant was not "constitutionally defective" because it did not include this phrase. *Id.* at 766. We stated that "[n]ot every omission to technically comply with literal wiretap statutory requirements renders a wiretap 'unlawful' within the meaning of [the statute], nor does every technical omission justify suppression of disclosure of contents of the intercepted communications or derivative evidence." *Quinn*, 436 N.W.2d at 767.

The statute at issue in *Quinn* provided that the warrant expired when its objective was achieved or after 10 days, whichever occurred first. *Id.* at 766. Under those circumstances, where "inclusion of the omitted language . . . would have been essentially redundant," we concluded it was proper to focus on substance over "literal formalism." *Id.* Because the "technical omission did not result in frustration of the statute's underlying purpose to minimize governmental intrusion into the lives of its citizens," we held that the evidence did not have to be suppressed. *Id.* at 767.

It is helpful to compare the defect at issue in *Quinn* with the defect at issue in another criminal case, *State v. Frink*, 296 Minn. 57, 206 N.W.2d 664 (1973). In *Frink*, we addressed a provision in state law that expressly stated that only a county attorney could make an application for a

---

5. Hester contends that we rely on the test set forth in *State v. Frisby*, 260 Minn. 70, 108 N.W.2d 769 (1961), to determine when a statute is mandatory and when a statute is directory. In *Frisby*, we stated,

> [W]here the provisions of the statute do not relate to the essence of the thing to be done, are merely incidental or subsidiary to the chief purpose of the law, are not designed for the protection of third persons, and do not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not as mandatory.

260 Minn. at 76, 108 N.W.2d at 773. *Frisby* also arose in the condemnation context, not the criminal context. *Id.* at 72, 108 N.W.2d at 770. We have never applied *Frisby* in the criminal context, and Hester has not articulated a reason why we should do so here. For these reasons, we decline to apply the analysis in *Frisby* to the issue raised here.

wiretap warrant. 296 Minn. at 57, 75, 206 N.W.2d at 665, 674. The county attorney had not applied for the warrant. *Id.* at 58, 206 N.W.2d at 665. Rather, an assistant county attorney submitted the application. *Id.* at 58, 206 N.W.2d at 665. We held that the assistant county attorney's application was more than a "technical defect in procedure" because the purpose of the requirement for a county attorney to make the application was to have a politically-accountable individual, i.e., the county attorney, make the application. *See id.* at 73–74, 206 N.W.2d at 673–74 (citation omitted) (internal quotation marks omitted).

*Quinn* and *Frink* indicate that the failure to comply strictly with a requirement of a statute is not fatal when a party has failed to comply with a technical provision of the statute but has nevertheless complied with the substance of the statute. But here, the Lower Sioux did not comply with the substance of the insurance requirements set forth in section 626.91, subdivision 2(a)(2). It is not as if the Lower Sioux had the requisite amount of liability insurance and simply omitted forwarding the certificate of insurance to the Board of Peace Officer Standards and Training as the statute requires. *See* Minn.Stat. § 626.91, subd. 2(a)(2). The Lower Sioux failed to obtain the amount of insurance required. Subdivision 2(a)(2) required the Lower Sioux to obtain a $3.6 million annual cap for liability insurance coverage, and here only $3 million in coverage was in force. The Lower Sioux's failure to meet the statutory threshold is not a technical defect. Because there is no evidence in the record to indicate that the Lower

Sioux complied with the requirement to have an annual liability insurance limit of $3.6 million when Hester was arrested, we hold that the Lower Sioux did not comply with section 626.91, subdivision 2(a)(2).[6]

In sum, we hold that the Lower Sioux did not comply in substance with section 626.91, subdivision 2(a)(2), which required the Lower Sioux to have the correct liability insurance limits at the time Hester was arrested. Because the Lower Sioux had not satisfied the requirements of Minn. Stat. § 626.91, subd. 2(a), the Lower Sioux officer who asked Hester to submit to a chemical test was not a "peace officer" under Minn.Stat. § 169A.03, subd. 18. And because a "peace officer" did not ask Hester to submit to a chemical test, Hester cannot be convicted of criminal test refusal. Accordingly, we reverse Hester's conviction for criminal test refusal.

Reversed.

---

6. Alternatively, Hester contends that the Mutual Aid and Assistance Agreement is not a joint powers agreement for purposes of Minn. Stat. § 471.59, as required in Minn.Stat. § 626.91, subd. 2(b), and that the Lower Sioux did not have the authority to appoint police officers with the same authority as peace officers employed by Redwood County because Hester's arrest exceeded the authority of the agreement. We do not have to reach these issues because of our conclusion above that the Lower Sioux did not comply with section 626.91, subdivision 2(a)(2).