JOHNSON, Judge
Randy Lee Thompson was convicted of first-degree driving while impaired. He challenges the district court's denial of his motion to suppress the state's evidence. He argues that he was unlawfully arrested by a Red Lake Band police officer before he was arrested by a Beltrami County deputy sheriff. We conclude that the district court did not err by denying Thompson's motion because Indian tribes have inherent authority to expel a non-member who is suspected of criminal activity from the tribe's reservation by detaining and delivering the non-member to a non-Indian *24 law-enforcement agency. Therefore, we affirm.
FACTS
The facts relevant to this appeal are contained in two written reports, both of which were introduced into evidence at the hearing on Thompson's motion to suppress. One report was prepared by Officer Bendel, an officer of the Red Lake Police Department; the other report was prepared by Deputy Roberts, a Beltrami County deputy sheriff.
The report prepared by Officer Bendel states that, on August 16, 2017, Thompson's brother was treated at the Red Lake Indian Health Service Hospital in the city of Red Lake on the Red Lake reservation. The hospital's lead nurse called Thompson by telephone and asked him to come to the hospital to pick up his brother, who was being discharged. While speaking with Thompson, the lead nurse perceived that he was intoxicated. The lead nurse spoke with Officer Bendel by telephone and asked him to remove Thompson's brother from the hospital and also stated that Thompson seemed intoxicated.
Officer Bendel drove to the hospital, where he saw Thompson's brother sitting in a wheelchair, waiting for a ride. The lead nurse asked Officer Bendel to drive Thompson's brother to his home beyond the boundaries of the reservation or, at the least, to the reservation boundary. Officer Bendel contacted his supervisor, who instructed him not to drive Thompson's brother home. Officer Bendel then saw Thompson arrive at the hospital, driving his brother's green pick-up truck. As Thompson exited the truck and approached his brother, Officer Bendel observed that Thompson's eyes were "watery and bloodshot," that he was "slurring his words," and that he smelled of an alcoholic beverage. Officer Bendel administered a preliminary breath test, which indicated that Thompson had an alcohol concentration of 0.121. Officer Bendel administered several field sobriety tests, which further indicated that Thompson was intoxicated.
Officer Bendel informed Thompson that he was being detained on suspicion of driving while impaired. Officer Bendel placed handcuffs on Thompson's wrists, read him the Miranda warning, and placed him in the back seat of his patrol car. Officer Bendel asked the Red Lake dispatcher to contact the Beltrami County Sheriff's office to request that a deputy sheriff meet Officer Bendel at the reservation boundary and take custody of Thompson, who Officer Bendel apparently knew was not a member of the Red Lake Band. Before transporting Thompson, Officer Bendel administered a second preliminary breath test, which indicated an alcohol concentration of 0.136.
As Officer Bendel drove south on State Highway 89, he spoke with Deputy Roberts, who agreed to meet him at the reservation boundary. During that conversation, Officer Bendel briefed Deputy Roberts on the situation. Officer Bendel waited at the boundary until Deputy Roberts arrived, at which time Officer Bendel transferred custody of Thompson to Deputy Roberts.
The report prepared by Deputy Roberts states that, upon meeting Officer Bendel at the reservation boundary, Officer Bendel told him that Thompson had failed field sobriety tests and two preliminary breath tests. Deputy Roberts handcuffed Thompson and placed him in the back seat of his squad car. As Deputy Roberts did so, he observed that Thompson had bloodshot and watery eyes. Deputy Roberts drove Thompson to the Beltrami County jail, where he read Thompson the implied-consent advisory. Thompson agreed to submit to a breath test, which revealed an alcohol concentration of 0.11.
*25 The state charged Thompson with first-degree driving while impaired (DWI), in violation of Minn. Stat. § 169A.24, subd. 1(2) (2016). Thompson moved to suppress all of the state's evidence on the ground that he was unlawfully arrested by Officer Bendel because, he asserted, Officer Bendel is not a "peace officer," as that term is defined in the relevant Minnesota statute. See Minn. Stat. § 169A.03, subd. 18 (2016). A brief omnibus hearing was held in early September 2017. The district court identified the sole issue as "whether the Red Lake officer is an officer per the statute." The prosecutor and Thompson's attorney agreed with the district court's statement of the issue and agreed to submit memoranda of law.
In Thompson's memorandum, he argued that Officer Bendel is not a peace officer for purposes of the Minnesota DWI statute, that Officer Bendel unlawfully arrested Thompson, and that the unlawful arrest required the suppression of all evidence arising from the arrest. In response, the state argued that Minnesota law cannot authorize Red Lake tribal police officers to act as peace officers for purposes of the Minnesota DWI statute; that Thompson was "subject to the Red Lake Officer, as that is who enforces the law on the Red Lake Indian Reservation"; and that Thompson's argument, if adopted, would imply that no one may enforce DWI laws on the Red Lake reservation.
In early November 2017, the district court filed a two-page order and memorandum in which it denied Thompson's motion. The memorandum states, in full, as follows:
Public Law 83-280 (codified as 18 U.S.C. § 1162, 28 U.S.C. § 1360, 25 U.S.C. §§ 1321 - 1326 ) granted jurisdiction of Indian Reservations to the States; in Minnesota this included all Indian Reservations except the Red Lake Indian Reservation. Minnesota law does not govern on the Red Lake Band of Chippewa Indian Reservation; the Red Lake Nation governs and polices itself. Because Red Lake is a sovereign nation, the state of Minnesota can neither grant nor deny authority over how the Red Lake Nation makes or enforces laws, including laws granting law enforcement authority. No Minnesota statute specifically authorizes Red Lake Police officers to act as peace officers and perform sobriety tests and arrests because Minnesota does not have the authority to do so.
Furthermore, neither the Minnesota State Patrol nor the Beltrami County Sheriff's department has jurisdiction on the Red Lake Indian Reservation; to hold that the Red Lake Police Department also cannot enforce the DWI laws against non-band members on the Red Lake Indian Reservation would create an absurd result.
Defendant's motion to suppress and dismiss is denied.
At trial in early December 2017, Thompson waived his right to a jury trial, stipulated to the prosecution's evidence, and agreed that his right to appeal would be limited to the district court's ruling on the pre-trial suppression motion. In addition, both parties agreed that the pre-trial ruling would be dispositive of the case. See Minn. R. Crim. P. 26.01, subd. 4. The district court found Thompson guilty and sentenced him to 60 months of imprisonment. Thompson appeals.
ISSUE
Did the Red Lake tribal police officer unlawfully arrest Thompson by detaining him on suspicion of driving while impaired, driving him to the boundary of the Red Lake reservation, and delivering him to a Beltrami County deputy sheriff?
*26 ANALYSIS
On appeal, Thompson renews the argument that he made to the district court. In his principal brief, he argues that Officer Bendel is not a "peace officer" as that term is defined in the Minnesota DWI statute and, thus, is not authorized to make an arrest for purposes of enforcing Minnesota DWI laws; that Officer Bendel arrested him; that the arrest is unlawful because Officer Bendel is not a "peace officer"; and that the unlawful arrest requires the suppression of all evidence arising from the arrest. In its responsive brief, the state argues that Officer Bendel is a "peace officer" under the Minnesota DWI statute; that, in the alternative, Officer Bendel's arrest of Thompson is justified by the citizen's-arrest statute, see Minn. Stat. § 629.37 (2016) ; and that the district court did not err by denying Thompson's motion to suppress on the ground that a contrary conclusion would create an absurd result.
At oral argument, the appellate attorneys for both parties referred to legal principles that are beyond the scope of their respective briefs. Thompson's appellate attorney asserted that only the federal government may prosecute a person who is not a member of the Red Lake Band for criminal conduct occurring on the Red Lake reservation. In response, the county attorney asserted that the state may prosecute a non-Indian for driving while impaired on the Red Lake reservation but that a county deputy sheriff may not enforce Minnesota law on the Red Lake reservation. In rebuttal, Thompson's attorney candidly acknowledged that, under federal law, Indian tribes generally may expel non-members from their reservations. The court asked follow-up questions of Thompson's attorney concerning the authority of an Indian tribe to expel non-members and whether such authority was exercised in this case.
After oral argument, the court determined that supplemental briefing would assist the decision-making process. The court did so because Thompson's argument depends, at least in part, on the authority of Indian tribes to police tribal lands and challenges the actions of a police officer of the Red Lake Band, which is not a party to this appeal. Both parties submitted supplemental briefs, which were helpful to the court. In Thompson's supplemental brief, he again acknowledges that Indian tribes possess inherent authority to expel non-members from their lands, but he argues that such authority does not authorize a tribal police officer to make an arrest. The state argues in its supplemental brief that Indian tribes possess inherent authority to expel non-members from their lands and that Officer Bendel acted pursuant to that authority when he detained Thompson and delivered him to Deputy Roberts.
A.
We first consider whether Officer Bendel is a peace officer for purposes of the Minnesota DWI statute. This is the issue that was identified by the district court at the hearing on Thompson's motion to suppress.
Chapter 169A of the Minnesota Statutes is known as the Minnesota Impaired Driving Code. Minn. Stat. § 169A.01, subd. 1 (2016). The impaired-driving code establishes, among other things, the criminal offenses of driving while impaired. Minn. Stat. §§ 169A.20 -.27 (2016). The impaired-driving code provides that, if there is probable cause that a person has committed the offense of DWI, the person may be arrested by a "peace officer." Minn. Stat. § 169A.40, subd. 1 (2016). For purposes of chapter 169A, the term "peace officer" is defined to mean:
(1) a State Patrol officer;
*27 (2) University of Minnesota peace officer;
(3) police officer of any municipality, including towns having powers under section 368.01, or county; and
(4) for purposes of violations of this chapter in or on an off-road recreational vehicle or motorboat, or for violations of section 97B.065 or 97B.066, a state conservation officer.
Minn. Stat. § 169A.03, subd. 18.
Thompson contends that Officer Bendel is not a "peace officer" for purposes of chapter 169A because he is not among the officers listed in section 169A.03, subdivision 18. In response, the state contends that Officer Bendel is included in the third paragraph of the definition on the ground that an Indian tribe is a "municipality." For this proposition, the state cites only one Minnesota case: Granite Valley Hotel Ltd. P'ship v. Jackpot Junction Bingo & Casino , 559 N.W.2d 135 (Minn. App. 1997). Specifically, the state quotes one sentence on page 142 of that opinion. But the quoted sentence is part of a concurring opinion, which is not the opinion of the court and, thus, not precedential. See id. at 138-91 (Randall, J., concurring specially). The supreme court had an opportunity in State v. Hester , 796 N.W.2d 328 (Minn. 2011), to say that an Indian tribe is a municipality for the purposes of section 169A.03, subdivision 18(3), but did not do so. Id. at 332-33.
In addition to the statutory definition of "peace officer" in chapter 169A, it is appropriate to consider other statutes that define the powers of tribal police officers. In Hester , the supreme court considered whether an officer of the Lower Sioux Indian Community was a "peace officer" for purposes of section 169A.03, subdivision 18. Id. at 331-33. The supreme court looked to section 626.91, which stated that the Lower Sioux " 'has the powers of a law enforcement agency if' " certain statutory requirements are met. Id. at 332 (quoting Minn. Stat. § 626.91, subds. 2, 2(a), 4 ). As Thompson notes, section 626.91 is one of three statutes that define the powers of tribal police officers of specific tribes or bands. See Minn. Stat. §§ 626.90 (Mille Lacs Band of Chippewa Indians), .91 (Lower Sioux Indian Community), .92 (Fond du Lac Band of Lake Superior Chippewa) (2016). But there is no such statute for the Red Lake Band. Another nearby statute defines the law-enforcement authority of other Indian tribes and bands. See Minn. Stat. § 626.93 (2016). That statute provides, in part, "If the requirements of subdivision 2 are met and the tribe enters into a cooperative agreement pursuant to subdivision 4, the tribe shall have concurrent jurisdictional authority under this section with the local county sheriff within the geographical boundaries of the tribe's reservation to enforce state criminal law." Id. , subd. 3. There is nothing in the record of this case to suggest that the Red Lake Band has entered into a cooperative agreement that would give its police officers concurrent jurisdiction to enforce state criminal law on the Red Lake reservation.
Thus, Officer Bendel, a Red Lake tribal police officer, is not a "peace officer" for purposes of the Minnesota Impaired Driving Code, chapter 169A.
B.
The next question is whether Officer Bendel arrested Thompson.[1] The district court did not make any findings as to *28 whether Officer Bendel arrested Thompson. It appears that the district court intentionally avoided the issue on the ground that the State of Minnesota "does not have the authority to" authorize a Red Lake police officer to make an arrest. Regardless, the state does not dispute Thompson's contention that he was arrested. Rather, the state assumes that an arrest occurred. The state focuses its argument on the question whether the arrest was lawful or unlawful. Accordingly, for purposes of this opinion, we will accept the state's concession on that factual issue and proceed to analyze the remaining issues based on the assumption that Officer Bendel arrested Thompson.
C.
We proceed to the main issue in Thompson's argument: whether Officer Bendel's arrest is unlawful on the ground that the officer had no authority to arrest him for violating the Minnesota DWI statute on the Red Lake reservation.
1.
Thompson's argument for reversal is based primarily on the supreme court's opinion in Hester . The defendant in that case was arrested for DWI by a Lower Sioux police officer, who read Hester the implied-consent advisory. 796 N.W.2d at 330. Hester refused to submit to chemical testing and was charged and convicted of test refusal. Id . ; see also Minn. Stat. §§ 169A.20, subd. 2, .24, subd. 1(1) (2010). Hester challenged his conviction, arguing that he did not commit a crime when he refused to submit to chemical testing on the ground that the Lower Sioux tribal police officer was not a "peace officer" under the Minnesota DWI statute. Id . The supreme court agreed, reasoning that "because a 'peace officer' did not ask Hester to submit to a chemical test," he "cannot be convicted of criminal test refusal." Id. at 336.
Hester is distinguishable from this case. The offense in Hester was the appellant's refusal to submit to chemical testing after a tribal police officer read him the implied-consent advisory. Id. at 330-31. The reading of the implied-consent advisory by a licensed "peace officer" was a prerequisite of the offense. Id. at 330-31 ; see also Minn. Stat. § 169A.20, sub. 2 (2010). Because the *29 tribal police officer who read the implied-consent advisory to Hester was not licensed by the State of Minnesota, Hester did not commit a crime by refusing to submit to chemical testing in response to the tribal police officer's request. Hester , 796 N.W.2d at 336. The supreme court in Hester did not invalidate the arrest made by the tribal police officer or consider whether the arrest was valid. See id. at 336.
In this case, in contrast, the tribal police officer, Officer Bendel, did not read the implied-consent advisory to Thompson. Rather, Deputy Roberts did so. Furthermore, Thompson did not refuse to submit to chemical testing. Rather, he submitted to chemical testing by providing a sample of his breath, and the resulting breath test indicated that he was impaired. For purposes of the DWI statute, it is immaterial that Thompson's impairment was first observed by Officer Bendel instead of Deputy Roberts. Officer Bendel communicated his observations to Deputy Roberts, and Deputy Roberts also acquired first-hand knowledge of Thompson's likely impairment after he took custody of him. The determination of Thompson's guilt does not depend on whether Officer Bendel is a "peace officer" licensed by the State of Minnesota. Thus, the district court's reasoning is not in conflict with the supreme court's opinion in Hester .
2.
Thompson's argument for reversal also is based on the principle that, because Officer Bendel was not licensed by the State of Minnesota, he had no authority to arrest him for a violation of the Minnesota DWI statute on the Red Lake reservation.
Thompson raised this issue in the district court by contending that "Red Lake Tribal authorities may enforce tribal laws on their own reservation against their own band members," that "the defense is unaware of any legal authority which permits Red Lake law enforcement and prosecutorial authorities to prosecute non-tribal members in tribal court," and that, as a consequence, "tribal authorities cannot police their own reservation as it pertains to non-band members." Thompson also contended in the district court that Red Lake "could agree to allow Beltrami County law enforcement to patrol and enforce Minnesota DWI laws against non-band members on the Red Lake reservation" but that "[b]y not allowing Beltrami County to enforce said DWI offenses against non-tribal members, the Red Lake Band is choosing to allow said conduct to occur." The state responded to Thompson's argument by contending that the Red Lake Band "governs itself and polices itself" and that Thompson "was subject to [the authority of] the Red Lake officer, as that is who enforces the law on the Red Lake Indian reservation." The district court addressed this issue in a manner that is consistent with the state's argument. The district court stated that "Minnesota law does not govern on the Red Lake Band Indian Reservation" and that "the Red Lake Nation governs and polices itself." The district court also stated, "Because Red Lake is a sovereign nation, the state of Minnesota can neither grant nor deny authority over how the Red Lake Nation makes or enforces laws, including laws granting law enforcement authority."
Whether a federal, tribal, or state law-enforcement officer has authority to investigate a criminal offense committed on an Indian reservation generally depends on whether the federal government, a tribe, or a state has authority to prosecute and to adjudicate guilt with respect to the offense. See Felix S. Cohen, Federal Indian Law § 9.07, at 771-75 (2012). "Federal, tribal, and state law enforcement officers *30 may all conceivably operate within Indian country, creating difficult jurisdictional issues and conflicts." Id. at 771. But, as a general rule, "The investigative authority of officers is ... generally limited to the criminal jurisdiction of their government." Id. at 772.
The federal government has exclusive authority to prosecute both Indians and non-Indians for violations of generally applicable federal crimes affecting a federal interest or interstate commerce. United States v. Wadena , 152 F.3d 831, 840-42 (8th Cir. 1998) ; United States v. Blue , 722 F.2d 383, 384 (8th Cir. 1983) ; State by Minnesota State Ethical Practices Bd. v. Red Lake DFL Comm. , 303 N.W.2d 54, 55 (Minn. 1981). The federal government also has authority under the Indian Country Crimes Act to prosecute persons who violate other federal criminal statutes if either the person who committed the crime or the victim of the crime (but not both) is an Indian (unless the person already has been prosecuted by an Indian tribe). 18 U.S.C. § 1152 (2012) ; see also Negonsott v. Samuels , 507 U.S. 99, 102-06, 113 S. Ct. 1119, 1121-23, 122 L.Ed.2d 457 (1993). The federal government's authority to prosecute under the Indian Country Crimes Act extends to violations of state criminal statutes that are incorporated into federal law by the Assimilative Crimes Act. 18 U.S.C. § 13 (2012) ; United States v. Langford , 641 F.3d 1195, 1197 (10th Cir. 2011). The federal government also has authority under the Major Crimes Act to prosecute Indians (but not non-Indians) who commit any of the serious offenses that are specifically listed in the statute. 18 U.S.C. § 1153 (Supp. 2017) ; United States v. Zepeda , 792 F.3d 1103, 1113-14 (9th Cir. 2015) ; United States v. Norquay , 905 F.2d 1157, 1158-59 (8th Cir. 1990). These principles reflect the fact that Indian tribes "are subject to plenary control by Congress." Michigan v. Bay Mills Indian Community , 572 U.S. 782, 788, 134 S. Ct. 2024, 2030, 188 L.Ed.2d 1071 (2014) (citing United States v. Lara , 541 U.S. 193, 200, 124 S. Ct. 1628, 1633, 158 L.Ed.2d 420 (2004) ).
"Indian tribes are domestic dependent nations that exercise inherent sovereign authority." Id. (quotations omitted). Accordingly, Indian tribes retain inherent authority to prosecute Indians for violations of the tribe's criminal code that are committed on the tribe's reservation. United States v. Wheeler , 435 U.S. 313, 322-23, 98 S. Ct. 1079, 1085-86, 55 L.Ed.2d 303 (1978) ; Ex parte Kan-gi-shun-ca , 109 U.S. 556, 567-72, 3 S. Ct. 396, 403-07, 27 L.Ed. 1030 (1883) ; see also Duro v. Reina , 495 U.S. 676, 686-88, 110 S. Ct. 2053, 2060-61, 109 L.Ed.2d 693 (1990) ; Oliphant v. Suquamish Indian Tribe , 435 U.S. 191, 195-97, 98 S. Ct. 1011, 1014-15, 55 L.Ed.2d 209 (1978). However, "Tribal governments generally lack criminal jurisdiction over non-Indians who commit crimes in Indian country." United States v. Bryant , --- U.S. ----, 136 S. Ct. 1954, 1960 n.4, 195 L.Ed.2d 317 (2016) ; see also Oliphant , 435 U.S. at 212, 98 S. Ct. at 1022-23.[2] Thus, Indian tribes may not prosecute a non-Indian for a violation of the tribe's criminal code that is committed on the tribe's reservation if the victim of the crime is a non-Indian or if the crime is a victimless *31 crime.[3] Oliphant , 435 U.S. at 211-12, 98 S. Ct. at 1022-23 ; see also New York ex rel. Ray v. Martin, 326 U.S. 496, 497-501, 66 S. Ct. 307, 307-09, 90 L.Ed. 261 (1946) ; Draper v. United States , 164 U.S. 240, 242-47, 17 S. Ct. 107, 108-09, 41 L.Ed. 419 (1896) ; United States v. McBratney , 104 U.S. 621, 624, 26 L.Ed. 869 (1881).
States have the narrowest role in prosecuting crimes committed on Indian reservations, reflecting the fact that a state may not alter or limit the powers of a tribal government but, rather, must recognize the tribal powers that are recognized by federal law. See California v. Cabazon Band of Mission Indians , 480 U.S. 202, 207, 107 S. Ct. 1083, 1087, 94 L.Ed.2d 244 (1987) ; Washington v. Confederated Tribes of Colville Indian Reservation , 447 U.S. 134, 154, 100 S. Ct. 2069, 2081, 65 L.Ed.2d 10 (1980). "As a general rule, states lack jurisdiction in Indian country absent a special grant of jurisdiction." Cohen, supra , § 903[1], at 763; see also id. , § 6.03[a], at 511-13. Unless a Congressional grant of authority exists, states may exercise jurisdiction over criminal offenses committed on an Indian reservation only to the extent that the federal government and a tribe may not do so. See Nevada v. Hicks , 533 U.S. 353, 365, 121 S. Ct. 2304, 2313, 150 L.Ed.2d 398 (2001) ; In re Civil Commitment of Johnson , 800 N.W.2d 134, 139 (Minn. 2011) ; State v. Jones , 729 N.W.2d 1, 4-5 (Minn. 2007) ; State v. Stone , 572 N.W.2d 725, 728 (Minn. 1997). Consequently, a state may prosecute and punish a violation of a state criminal statute that is committed on an Indian reservation by a non-Indian only if the victim of the crime is a non-Indian or if the crime is a victimless crime. Solem v. Bartlett , 465 U.S. 463, 465 n.2, 104 S. Ct. 1161, 1163 n.2, 79 L.Ed.2d 443 (1984) ; State v. Holthusen , 261 Minn. 536, 113 N.W.2d 180, 187-88 (Minn. 1962) (holding that state may prosecute non-Indian for murder of non-Indian on Red Lake reservation).
The United States Supreme Court has not considered whether a state may prosecute a non-Indian for committing a DWI offense on an Indian reservation. See Cohen, supra , § 9.03[1], at 764. Likewise, neither the Minnesota Supreme Court nor this court has considered the issue. Courts in other states have held that a state has authority to do so. State v. Snyder , 119 Idaho 376, 807 P.2d 55, 56-58 (1991) ; State v. Warner , 71 N.M. 418, 379 P.2d 66, 68-69 (N.M. 1963) ; State v. Sanchez , 335 P.3d 253, 256 (N.M. App. 2014) ; State v. Kostick , 233 N.C.App. 62, 755 S.E.2d 411, 418-19 (2014). We believe that these state-court opinions are consistent with the general principles described above. Because there is no particular victim of Thompson's DWI offense, the state has jurisdiction to prosecute Thompson in this case. Thompson has not argued otherwise, either in this court or in the district court.
D.
As stated above, whether a federal, tribal, or state law-enforcement officer has authority to investigate a criminal offense committed on an Indian reservation generally depends on whether the federal government, a tribe, or a state has authority to prosecute and to adjudicate guilt with respect to the offense. See Cohen, supra , § 9.07, at 771-72.
*32 In general, powers of policing and arrest follow the criminal jurisdiction of the three governments in the absence of special arrangements or agreements. For example, federal officers enforce the Major Crimes Act against Indians and the General Crimes Act against both Indians and non-Indians in Indian country. Tribal police enforce tribal laws against Indians and also have sufficient power over non-Indians to exercise the tribal power of exclusion. ... Finally, state police or county sheriffs and similar state personnel have authority to arrest non-Indians committing crimes against non-Indians or victimless crimes.
William C. Canby, Jr., American Indian Law 203-04 (6th ed. 2015).[4] It follows that a state law-enforcement agency, such as the Beltrami County Sheriff's office, is authorized to enforce Minnesota's DWI laws on the Red Lake reservation to the extent that such an offense is committed by a non-Indian. Conversely, the Red Lake Police Department is authorized to enforce its impaired-driving laws on the Red Lake reservation to the extent that such an offense is committed by an Indian.
The above-stated rule assumes that an officer knows whether a driver is an Indian or a non-Indian. In many cases, of course, an officer will not know until performing some investigation. One court has noted that this situation may lead to "obvious practical difficulties." Bressi v. Ford , 575 F.3d 891, 896 (9th Cir. 2009). But that court also recognized that the practical difficulties have a practical solution: "The solution is to permit the officer to stop the vehicle and to determine first whether or not the driver is an Indian." Id. Accordingly, "a state officer can briefly stop a moving vehicle to ascertain whether a violator is an Indian and, if so, may turn him or her over to tribal police." Canby, supra , at 206. Similarly, "to permit tribal officers to exercise their legitimate tribal authority, ... it has been held not to violate a non-Indian's rights when tribal officers stop him or her long enough to ascertain that he or she is, in fact, not an Indian." Bressi , 575 F.3d at 896. "If the violator turns out to be a non-Indian, the tribal officer may detain the violator and deliver him or her to state or federal authorities." Id . (citing Strate v. A-1 Contractors , 520 U.S. 438, 456 n.11, 117 S. Ct. 1404, 1414 n.11, 137 L.Ed.2d 661 (1997) ; State v. Schmuck , 121 Wash.2d 373, 850 P.2d 1332, 1342 (1993) ).
In footnote 11 of Strate , which was cited by the Bressi court, the United States Supreme Court stated, "We do not here question the authority of tribal police to patrol roads within a reservation, including rights-of-way made part of a state highway, and to detain and turn over to state officers nonmembers stopped on the highway for conduct violating state law." Strate , 520 U.S. at 456 n.11, 117 S. Ct. at 1414 n.11. The United States Supreme Court previously had recognized a tribal police officer's authority to detain a person suspected of violating a state criminal law and to deliver the person to state law-enforcement authorities:
Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender *33 and transport him to the proper authorities.
Duro , 495 U.S. at 697, 110 S. Ct. at 2065-66. This authority is based on the "traditional and undisputed power [of Indian tribes] to exclude persons whom they deem to be undesirable from tribal lands." Id. at 696, 110 S. Ct. at 2065 ; see also Ortiz-Barraza v. United States , 512 F.2d 1176, 1179-180 (9th Cir. 1975).
A few courts in other jurisdictions have considered the authority of an Indian tribe to exclude non-members in circumstances that are similar to the circumstances of this case. For example, in Schmuck , a tribal police officer stopped a speeding vehicle, developed a suspicion that the driver was drunk, determined that the driver was a non-Indian, requested assistance from a state trooper, and detained the non-Indian driver for approximately 20 minutes until a state trooper arrived at the scene. 850 P.2d at 1333-34. The driver, Schmuck, was charged and convicted in state court of driving while under the influence of intoxicating liquor. Id. at 1334. On appeal, Schmuck argued, in part, that the tribal police officer "did not have inherent authority to detain him once [the tribal police officer] determined that Schmuck was a non-Indian." Id. at 1337. The Washington Supreme Court rejected this argument, reasoning that the "proper response to a crime committed by a non-Indian on the reservation is for the tribal police to detain the offender and deliver him or her to the proper authorities." Id. at 1339. The court added, "This is precisely what Tribal Officer Bailey did: he detained Schmuck and properly delivered him up." Id. The court summarized by stating, "We conclude an Indian tribal officer has inherent authority to stop and detain a non-Indian who has allegedly violated state and tribal law while on the reservation until he or she can be turned over to state authorities for charging and prosecution." Id. at 1342.
Similarly, in United States v. Terry , 400 F.3d 575 (8th Cir. 2005), tribal police officers went to a residence in response to a report of domestic violence committed by a man in a yellow pick-up truck. Id. at 578. Upon arriving, they saw Terry sitting in a yellow pick-up truck and noticed that he smelled of alcohol. Id . The tribal police officers held Terry on suspicion of four criminal offenses, including driving while intoxicated, and he was transported to a tribal jail. Id. Meanwhile, one of the tribal police officers called a South Dakota county sheriff "to advise him that he might be holding a non-Indian." Id. at 579. The sheriff asked the tribal police officer to hold Terry until the next morning. Id. On appeal from his conviction in federal court of unlawful possession of a firearm, Terry argued that the tribal police officers unlawfully seized him. Id. at 577, 579. The United States Court of Appeals for the Eighth Circuit rejected the argument, stating that, for the reasons stated in Duro and Strate , "tribal police officers do not lack authority to detain non-Indians whose conduct disturbs the public order on their reservation," even if the tribe does not have authority to prosecute a non-Indian. Id. at 579-80.
Likewise, in Colyer v. State, Dep't of Transportation , 203 P.3d 1104 (Wyo. 2009), law-enforcement officers in a Wyoming county received a report that a vehicle had collided with a pole and a trash can at a convenience store and had driven away. Id. at 1105. A deputy sheriff and two Bureau of Indian Affairs (BIA) officers tracked the vehicle. Id. at 1105-06. A BIA officer stopped the vehicle on an Indian reservation and detained the driver, Colyer, a non-Indian, until a deputy sheriff arrived at the scene. Id. at 1106. Upon arrival, the deputy sheriff suspected Colyer of being intoxicated, performed field *34 sobriety tests, administered a portable breath test, and arrested Colyer for driving while under the influence of alcohol. Id. On appeal from the suspension of his driver's license, Colyer first argued that the BIA officer was not a "peace officer," as that term is used in a state statute, such that the BIA officer "had no authority to detain him while waiting for the deputy sheriff to arrive." Id. at 1107. The Wyoming Supreme Court did not resolve that issue. Id. at 1107-09. Instead, the court considered whether the BIA officer's detention of Colyer "rendered unlawful the otherwise lawful arrest of [Colyer] by a ... deputy sheriff." Id. at 1105 ; see also id. at 1108-11. The court reviewed the relevant caselaw, including Duro , Schmuck , and Terry , and concluded as follows:
[N]othing occurred in the detention of the appellant to render his arrest unlawful. The appellant could not have been arrested and prosecuted within the tribal court system because he was not a tribal member. He could not have been arrested by the B.I.A. officer and prosecuted within the federal system because the DWUI offense was a State offense, making him subject to arrest and prosecution by the State. Despite the jurisdictional olio on the reservation, the law is clear that the appropriate action to be taken in circumstances such as those presented in this case is for the reservation officer to detain the appellant for formal arrest by a state officer. This is what happened.
Id . at 1110-11.
E.
In this case, it is undisputed that, when Thompson arrived at the hospital driving his brother's pickup truck, Officer Bendel had a reasonable suspicion that Thompson had engaged in criminal activity by driving while impaired. It also is undisputed that, after conducting a limited investigation, Officer Bendel had probable cause to believe that Thompson had violated the Minnesota DWI statute. Officer Bendel chose to detain Thompson, drive him to the reservation boundary, and deliver him to a Beltrami County deputy sheriff. Officer Bendel was authorized to do so because "[t]ribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them." Duro , 495 U.S. at 697, 110 S. Ct. at 2065-66. Furthermore, if the person disturbing public order is a non-Indian who has committed a criminal offense that may not be prosecuted by the tribe, "tribal officers may exercise their power to detain the offender and transport him to the proper authorities." Id. ; see also Strate , 520 U.S. at 456 n.11, 117 S. Ct. at 1414 n.11 ; Terry , 400 F.3d at 578-80 ; Schmuck , 850 P.2d at 1342 ; Colyer , 203 P.3d at 1109-11. Thus, contrary to Thompson's argument, Officer Bendel did not unlawfully detain or arrest him.
DECISION
In sum, the district court did not err by denying Thompson's motion to suppress evidence.
Affirmed.

A law-enforcement officer typically makes an arrest by expressly informing a person that he or she is being arrested. See, e.g. , Fellers v. United States , 540 U.S. 519, 521, 124 S. Ct. 1019, 1021, 157 L.Ed.2d 1016 (2004) ; State v. Gauster , 752 N.W.2d 496, 501 (Minn. 2008) ; State v. Ihle , 640 N.W.2d 910, 913 (Minn. 2002). In addition, Minnesota caselaw recognizes that a "de facto arrest" may occur if a person has not been formally arrested but effectively has been arrested because the person's liberty has been restrained to an extent that exceeds the scope of a lawful investigative detention. See, e.g. , State v. Blacksten , 507 N.W.2d 842, 846-47 (Minn. 1993) ; State v. Askerooth , 681 N.W.2d 353, 371 (Minn. 2004) (Russell A. Anderson, J., concurring specially); see also United States v. Sharpe , 470 U.S. 675, 683, 105 S. Ct. 1568, 1573-574, 84 L.Ed.2d 605 (1985). "The ultimate test to be used in determining whether a suspect was under arrest is whether a reasonable person would have concluded, under the circumstances, that he was under arrest and not free to go." State v. Beckman , 354 N.W.2d 432, 436 (Minn. 1984). The supreme court has emphasized that an arrest does not occur unless the person is both under arrest and not free to leave because "a person who is being detained temporarily is not free to leave during the period of detention, yet that does not convert the detention into an arrest." State v. Moffatt , 450 N.W.2d 116, 119-20 (Minn. 1990). This two-part test for a de facto arrest recognizes that, in some situations, a suspect who is not under arrest may not be free to leave because he is in investigative detention, in which case an officer may continue to detain him for a reasonable period of time. See Illinois v. Wardlow , 528 U.S. 119, 125, 120 S. Ct. 673, 676, 145 L.Ed.2d 570 (2000) ; see also Florida v. Royer , 460 U.S. 491, 497-98, 103 S. Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) ; United States v. Mendenhall , 446 U.S. 544, 550-57, 100 S. Ct. 1870, 1875-78, 64 L.Ed.2d 497 (1980) (plurality opinion); In re Welfare of E.D.J. , 502 N.W.2d 779, 783 (Minn. 1993).

As an exception to these general rules, certain states are authorized by federal statutes to exercise criminal jurisdiction within Indian country. Matthew L.M. Fletcher, Federal Indian Law § 7.5, at 329-30, 334-36 (2016). A federal statute commonly known as Public Law 280 grants the state of Minnesota authority to prosecute crimes "committed by or against Indians" on Indian reservations within the state except the Red Lake reservation. 18 U.S.C. § 1162 (2012) ; see also Pub. L. No. 83-280, 67 Stat. 588 (1953). Thus, Public Law 280 does not apply in this case.

A narrow exception to the general rule prohibiting Indian jurisdiction over non-Indians is the Violence Against Women Reauthorization Act of 2013, in which "Congress amended [the Indian Civil Rights Act] to authorize tribal courts to exercise special domestic violence criminal jurisdiction over certain domestic violence offenses committed by a non-Indian against an Indian." Bryant , 136 S. Ct. at 1960 n.4 (quotation omitted).

Some Indian tribes enter into agreements with state law-enforcement agencies that cross-deputize officers to enforce the laws of either jurisdiction. See Cohen, supra , § 9.07, at 772. Neither party to this appeal has indicated that the Red Lake Band has entered into such an agreement.